Filed 9/20/13  P. v. David CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROGER DAN DAVID,<br><br>Defendant and Appellant. | F064298<br><br>(Super. Ct. Nos. VCF258219 & VCF249268b)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Brett R. Alldredge, Judge.

Morgan C. Taylor, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Roger Dan David was convicted by jury of committing assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1), count 1), criminal threats (§ 422, count

---

[1]All further references are to the Penal Code unless otherwise indicated.

2), possession of a sawed-off shotgun (former § 12020, subd. (a)(1), count 3), and two counts of misdemeanor child endangerment (§ 273a, subd. (b), counts 5 and 7).[2]  In addition, the jury found true a special allegation that defendant used a knife during the commission of the criminal threat (§ 12022, subd. (b)(1)).  Defendant stipulated to a court trial regarding an additional charge that he was a felon in possession of a firearm (former § 12021, subd. (a)(1), count 4), and that he committed the above felony offenses while on bail or on his own recognizance on another felony offense (§ 12022.1).  After hearing the evidence presented at trial, the trial court found defendant guilty of this charge and found the enhancements true.

The trial court sentenced defendant to a term of three years for the assault with a deadly weapon conviction, a consecutive two-year term for one of the on bail enhancements, and two consecutive eight-month terms for each of the firearm charges.  In addition, the court imposed a concurrent two-year term for the criminal threats count, stayed the knife use enhancement, and struck the remaining bail enhancement allegations.  The same day, the court revoked probation in defendant's other felony case and imposed a consecutive one-year term.

On appeal, defendant contends (1) the evidence was insufficient to support the criminal threats and child endangerment charges, (2) his sentence violated section 654, (3) a section 294 restitution fine was improperly imposed, and (4) failure to apply the most recent conduct credits formula pursuant to section 4019 violated his equal protection rights.  We find insufficient evidence to support one of the child endangerment convictions.  As a result, the cause must be remanded for the trial court to reconsider the section 294 fine.  We also find part of defendant's sentence must be stayed pursuant to section 654.  We reject defendant's remaining contentions.

---

[2]The jury acquitted defendant of misdemeanor domestic battery (§ 243, subd. (e)(1), count 6) and the lesser included offense related to that charge.

2.

## FACTS

At the time of the incident, defendant and C.H., the victim, had been in a relationship for approximately 15 years. The two were living together during the relevant time with their minor son N.H. Beginning in February of 2011, the relationship between defendant and the victim became strained. C.H. recounted some instances of defendant's violence towards her. She recalled an instance where defendant threw a bottle at her, causing a bruise on her back. On another occasion, defendant threw a flashlight at her, striking her forearm and causing an injury. In September of that year, defendant began threatening to cut the victim's throat when he was angry with her.

On September 2, 2011, defendant began moving out of the house due to an argument with the victim. The following day, while defendant was taking items to the car, the victim approached defendant and told him to be sure to take everything with him. According to the victim, defendant approached her, told her to shut up, and jabbed her lip with his finger.[3] She recalled defendant's mother Shirley Williams was present during the incident.

N.H., who was 10 years old at the time of the trial, testified that he witnessed defendant slapping the victim on this occasion. N.H. was inside the home walking from his bedroom to the kitchen when he witnessed the incident from the living room window. He recalled it being dark outside at the time, and that his parents were in the front yard off of the porch. Upon seeing the incident, N.H. called 911. A sheriff's deputy responding to the incident noted the victim had some minor swelling to her lip. Defendant was arrested and taken to jail.

A few days later, upon defendant's release, defendant and the victim reconciled and defendant moved back into the home. Everything remained calm until September 23 when defendant and the victim again began arguing. The argument carried over to the

---

[3]This event was the basis for the misdemeanor domestic violence charge of which the defendant was acquitted.

3.

following morning and, once again, defendant began packing items to move out. Williams arrived and defendant began loading items into her car.

At one point, defendant and the victim got into an argument in the kitchen. During this argument, defendant threatened to call child protective services to take their minor son away from the victim. The victim responded by telling defendant he needed to stay away from N.H. "because he was just going to screw him up like he did the rest of his kids." Upon hearing this, defendant lunged at the victim, grabbed her by the throat, and pushed her back. The victim fell backwards against the refrigerator, where defendant let go of her throat. The victim attempted to walk away when defendant picked up a nearby steak knife, came toward her, and stated that he was going to cut her throat. During this time, defendant held the knife approximately six inches from her neck. As defendant was holding the knife, the victim told him to put the knife down, and she noticed defendant's eyes dart in one direction, and then he dropped the knife saying "What knife?" She assumed defendant saw someone at that time as his demeanor changed.

N.H. was watching television in the living room, next to the kitchen, at the time of this incident. According to N.H., defendant knew he was there. N.H. walked to the kitchen to get something to eat when he saw his father with his hand on a knife, while he was "up in [the victim's] face." While looking around the corner into the kitchen, N.H. heard his father tell his mother to "Shut the F up" and saw him pick up the knife and set it down. As a result N.H. felt like his father was going to hurt his mother, and he was "[a] little bit frightened." N.H. tried to call 911 for help, but the telephone was disconnected, so his mother made the call.

Sheriff's deputies responded to the call at approximately 10:20 a.m. Deputy Richard Morley noted the victim was crying, scared, and shaking when he spoke to her. He collected a knife from the kitchen drawer that N.H. pointed out to him. Deputy John Dow spoke to defendant who told him he had a shotgun in the laundry hamper. The deputy retrieved the unloaded semiautomatic shotgun from the hamper in the living

4.

room.  The gun had an overall length of 24 inches and a barrel length of 12 inches and was missing some parts.

Both N.H. and the victim were aware that defendant had a sawed-off shotgun in the house on September 24.  The victim recalled defendant obtaining a shotgun "at one time" to fix but did not realize it was at the house until she saw defendant with it on September 23 when he was packing his belongings.

*Defense Case*

Defense investigator Elizabeth Sepulveda-Huth testified that in a prior interview the victim stated defendant had pushed her in the chest during the September 24th incident, but had not mentioned him grabbing her by the neck.  The victim also stated the defendant held the knife in an upward manner, slightly pointed toward her, while the two were 12 inches apart.

Williams testified she was present during both the September 3d and 24th incidents.  She stated defendant never hit or touched the victim on either occasion.  Specifically regarding the incident with the knife, Williams testified she was with her son the entire time while he was packing and loading the car and he never had a knife or threatened the victim.

## DISCUSSION

### I.      Sufficiency of the Evidence Claims

In considering a defendant's claim of insufficiency of the evidence supporting a conviction, we review the whole record in the light most favorable to the judgment for substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that any rational trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  "[We] presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citations.]  The same standard applies when the conviction rests primarily on circumstantial evidence.  [Citation.]"  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

With these principles in mind, we turn to defendant's allegation attacking the sufficiency of the evidence on the criminal threats and child endangerment charges.

## A. Criminal Threats

To establish the offense of making a criminal threat, the prosecution must show: (1) the defendant willfully threatened to commit a crime that would result in death or great bodily injury; (2) the defendant made the threat with the specific intent it be taken as a threat; (3) the threat, on its face and under the circumstances in which it was made, was so unequivocal, unconditional, immediate, and specific as to convey a gravity of purpose and an immediate prospect of execution of the threat; (4) the threat caused the victim to be in sustained fear for his or her own safety or for his or her immediate family's safety; and (5) the victim's fear was reasonable. (§ 422; *People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

Defendant only challenges the element of sustained fear in this appeal, thus we shall only address this element. He claims the evidence of any sustained fear was lacking as the incident was brief and the victim never testified she was in sustained fear. We find the evidence was sufficient to support the charge.

As used in section 422, "sustained" has been defined to mean "a period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) In *Allen*, the court held the evidence was sufficient to support the sustained fear element of section 422 when the defendant, who had previously broken into the victim's home while repeatedly stalking and assaulting her daughter (his former girlfriend), pointed a gun at the victim, threatened to kill her, and was arrested 15 minutes after the victim called the police. The *Allen* court concluded the 15-minute period between the threat and the defendant's arrest established the victim's reasonably sustained fear because the victim knew about the defendant's prior conduct toward her daughter and had called the police during the earlier incidents. (*People v. Allen*, *supra*, at pp. 1151-1156.)

Likewise the court in *People v. Fierro* (2010) 180 Cal.App.4th 1342, found a short encounter was sufficient to support a finding of sustained fear. There, the defendant and the victim got into a confrontation at a gas station. The defendant left the area and the victim began fueling his car when he noticed the defendant driving back toward him. The defendant engaged in a verbal confrontation with the victim, then lifted his shirt and revealed what the victim and his son thought was a handgun. During the approximately one-minute incident, the defendant said he would kill the victim and his son, and should do so "right now." The defendant then told the victim to leave, which he did, driving to the freeway. Once the victim gained his composure and felt he was no longer in harm's way, he called 911. The call took place approximately 15 minutes after the incident. (*Id.* at pp. 1345-1346.)

The court found that although the incident itself was brief—less than one minute—the evidence was sufficient to support a finding of sustained fear. (*People v. Fierro*, *supra*, 180 Cal.App.4th at p. 1349.) First, the court rejected the argument that the victim's fear once he left the gas station should not be considered in determining the sufficiency of the evidence. Second, the court noted that even if it were only to consider the duration of the incident itself, the evidence still demonstrated a sustained fear because when "one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory." (*Ibid.*)

These cases make clear that even a brief incident can give rise to a sustained fear. We also note this case is unlike *In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140, upon which defendant relies. That case involved a schoolhouse altercation where a student left class to use the restroom, and when he returned, the classroom door was locked. When his teacher opened the door, it hit the student. In response, the student said, "'I'm going to get you,'" but made no further threat or act of aggression. The teacher felt physically threatened and sent the student to the office. When interviewed by the police, the student said he told his teacher, "'I'm going to kick your ass.'" (*Id.* at pp. 1135-1136.)

In reversing the finding on grounds of insufficiency of the evidence that the student had violated section 422, the Court of Appeal remarked there was nothing showing any fear was more than momentary or fleeting. The court listed the lack of a history of past disagreements or quarrels between the two individuals, the student did not specify the method in which the threat would be carried out, and the victim did not call the authorities until the next day. (*In re Ricky T.*, *supra*, 87 Cal.App.4th at p. 1140.) Unlike *Ricky T.*, the victim in the present case was confronted with a threat to her life by a knife-wielding defendant after defendant had already grabbed her by the throat and pushed her into a vulnerable position. The victim called 911 after the incident and was still visibly upset, shaking, and afraid when the authorities arrived. In addition, defendant had a history of assaulting the victim and threatening to do harm to her. These circumstances set this case apart from *Ricky T.*

Defendant asserts the victim's emotional state when the police arrived "could not, within reason, have been evidence of an ongoing 'sustained fear.'" We disagree. In *Allen*, other incidents that had occurred before the threat provided sufficient context to show the victim's fear was reasonably sustained. (*People v. Allen*, *supra*, 33 Cal.App.4th at p. 1156.) Other courts have looked at the victim's conduct after the threat to determine if the victim's initial fear was sustained for more than a momentary or fleeting period. (E.g., *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1337-1338, 1342, superseded on by statute on other grounds in *People v. Franz* (2001) 88 Cal.App.4th 1426, 1441 [victim called police 30 minutes after defendant threatened her, member of defendant's gang parked outside her house and honked horn, and victim learned other gang members were looking for her]; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1008-1009, 1014-1016, 1024 [failure to define "sustained fear" harmless error when evidence showed victims still afraid an hour after threats and after learning defendant firebombed their apartment]; see also *In re Ricky T. supra*, 87 Cal.App.4th at pp. 1135-1136, 1139-1141 [student's statements "'I'm going to get you'" and "'I'm going to kick your ass'" after teacher accidentally hit student while opening door insufficient threat when no history of

8.

animosity between them, student made no threatening gestures, and teacher sent student to the office where student subsequently apologized].)

Notwithstanding their very different factual circumstances, the common thread in these cases is that in evaluating the evidence supporting a charge of making a criminal threat, "all of the surrounding circumstances should be taken into account to determine if a threat falls within the proscription of section 422." (*People v. Solis*, *supra*, 90 Cal.App.4th at p. 1013.) Thus, the jury can properly consider a later action taken by a defendant, as well as the victim's conduct after the incident, in evaluating whether the crime of making a criminal threat has been committed. (See *id.* at pp. 1014-1016.)

The record supports the jury's finding that the victim was reasonably in sustained fear. The evidence demonstrated defendant grabbed the victim by her throat and pushed her into the refrigerator. Next, he armed himself with a nearby steak knife, held it up, threatened to slit her throat, and began advancing toward her. Only when the victim told him to put the knife down and defendant's "eyes darted over one direction" did his demeanor change and he dropped the knife. From this the jury certainly could infer defendant dropped the knife not because the victim told him to, but because he realized there was a witness to his threat. Indeed, the evidence further established defendant's son was nearby, saw the assault, saw defendant with the knife, believed defendant was going to hurt the victim, and was frightened by the incident. Although the incident itself was brief, the victim called 911 and was still crying, scared, and shaking when the deputies arrived. Further, the defendant was still at the home when the deputies arrived. Such facts certainly support the element of sustained fear.

Moreover, defendant's prior conduct toward the victim supported a finding she was in reasonably sustained fear. The victim testified defendant had battered her on two prior occasions by throwing a bottle and flashlight at her. In the month leading up to the attack, defendant had begun threatening to cut her throat when he was angry with her. Considering this background, it becomes clear defendant's threat on the date of the incident caused the victim to be in fear. Not only did defendant grab the victim by the

9.

neck and threaten to slit her throat, but he took steps toward that goal by arming himself with a knife, coming toward her, and holding the knife approximately six inches from her neck in the middle of her chest. The victim's action in calling 911 and her emotional state upon the deputy's arrival, led to the eminently reasonable inference the victim was in fear, and this fear was not momentary, fleeting, or transitory. Thus, considering all the circumstances in the case, the jury's conclusion was clearly supported by the evidence.

## B. Misdemeanor Child Endangerment Charges

Defendant next contends his convictions for misdemeanor child endangerment cannot stand. Defendant was convicted of two counts of child endangerment stemming from two separate incidents. We will discuss each count separately.

Section 273a, subdivision (b), provides:

> "Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered, is guilty of a misdemeanor."

The prosecution's theory regarding both child endangerment charges was that defendant willfully permitted N.H. to endure unjustifiable mental suffering by putting him in a position to witness the attack on his mother. When the theory is that the harm to the minor is indirectly inflicted, the defendant must have acted with criminal negligence. (*People v. Valdez* (2002) 27 Cal.4th 778, 781-791; *People v. Burton* (2006) 143 Cal.App.4th 447, 454.) Criminal negligence is defined as

> """"aggravated, culpable, gross, or reckless … conduct … [that is] such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life …."'" (*People v. Penny* (1955) 44 Cal.2d 861, 879 ….) 'Under the criminal negligence standard, knowledge of the risk is determined by an objective test: "[I]f a reasonable person in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness."' (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 574, italics omitted [further stating 'there can be no criminal

10.

negligence without actual or constructive knowledge of the risk']; *Walker v. Superior Court* (1988) 47 Cal.3d 112, 136 … ['criminal negligence must be evaluated objectively'].)" (*People v. Valdez, supra*, 27 Cal.4th at p. 783.)

With these standards in mind, we evaluate the evidence on both counts.

### 1. The evidence is sufficient to support count 5

Defendant contends the evidence was insufficient to support the child endangerment count occurring on September 24, 2011, as there was no evidence defendant directed any of his actions toward N.H. or that defendant even knew N.H. was present during the ordeal. We disagree.

In *People v. Burton, supra*, 143 Cal.App.4th 447, the defendant assaulted the mother of his child, causing her severe injuries. The victim was getting into her car when she encountered the defendant who was hiding near the car. He immediately attacked her, punching her in the face three to four times and leaving several severe cuts requiring extensive suturing. (*Id.* at p. 451.) The victim's eight-year-old son was outside at the time behind a wall adjacent to the car. The child did not witness the actual attack, however, he did witness the "'immediate and bloody results of [defendant's] handiwork.'" (*Id.* at p. 455.)

The court rejected the defendant's argument he did not act with criminal negligence toward the minor. Rather, the court found the evidence supported a finding the defendant knew the minor, his son, was present at the scene when he brutally attacked the victim. The minor had been with his mother at the passenger door while the defendant hid on the other side of the car just prior to the attack. In fact, the minor had just stepped away to urinate behind a wall next to the car. The fact the defendant knew the minor was present at the scene when he launched the attack and left the minor to witness its aftermath was sufficient to support a finding the defendant's "conduct toward his older son was such a departure from that of the ordinarily prudent or careful person as to be incompatible with a proper regard for human life." (*People v. Burton, supra*, 143 Cal.App.4th at p. 455.)

11.

Likewise here, defendant's actions were sufficient to support a finding of criminal negligence. The assault occurred in the morning hours when defendant, the victim, and N.H., their 10-year-old son, were all home. N.H. testified he was watching television in the living room that was next to the kitchen where the attack occurred. According to the victim, defendant had been packing his belongings that morning. Defendant's mother testified she was with him that morning as defendant went room to room packing his belongings. They had been doing so for a "[c]ouple hours." Defendant came into the kitchen and argued with the victim. As N.H. was present in the very next room watching television, the jury could certainly infer that defendant knew of his proximity. Indeed, N.H. testified defendant knew he was there. From the fact there was an argument between defendant and the victim, and defendant attacked the victim by pushing her and causing her to fall over a garbage can and into the refrigerator, one could infer that the 10-year-old child would investigate the noise in the adjacent room.

It is clear from this evidence defendant knew or should have known his son was present at the scene and could witness the attack. Just as in *Burton*, defendant, the minor's father, without regard for his child's well-being, launched an attack against the victim while his child was just behind an adjacent wall. In *Burton*, the evidence suggested the child did not actually see the attack, but the court still found he was present "at the scene" when the attack occurred. (*People v. Burton*, *supra* 143 Cal.App.4th at p. 455.) Likewise, N.H. was present "at the scene" by virtue of being in the very next room during the threats and assault on his mother.

Defendant also argues there was no evidence he inflicted any unjustifiable mental suffering upon N.H. He claims N.H. may simply have "received an important 'life lesson' about adults" and that "nothing traumatic or of lasting emotional effect occurred." Such an assertion is simply wrong. As the court in *Burton* noted, children witnessing domestic violence "suffer adverse effects similar to victims of direct physical and sexual abuse." (*People v. Burton*, *supra* 143 Cal.App.4th at p. 456.) The evidence established defendant grabbed the victim by the neck, pushed her, picked up a knife and held it close

12.

to her while threatening to cut her throat. N.H. actually witnessed part of this attack on the victim, specifically seeing defendant with a knife. N.H. noted his father was hitting his mother "again," he felt as if his father was going to hurt his mother, he was frightened by the attack, and he attempted to call 911 afterwards. "We must bear in mind that the attacker was not just anyone, but the minor's father, and the victim was not just anyone, but the minor's mother." (*People v. Burton*, *supra*, at p. 455.) Defendant launched a violent attack against N.H's mother with a weapon, knowing N.H. was in the next room. The evidence showed N.H. witnessed part of that attack believing his mother would be harmed at the hands of his father, causing him fear.[4] Further, the testimony established N.H. did not wish to see defendant anymore. We find this evidence was sufficient to support the jury's finding defendant, as a result of criminal negligence, willfully permitted the child to suffer unjustifiable mental suffering.

### 2. *The evidence is insufficient to support count 7*

Defendant further contends, and plaintiff concedes, there was insufficient evidence to support the finding defendant inflicted unjustifiable mental suffering upon N.H. on the September 3, 2011, incident, where defendant either slapped or poked the victim while the two were arguing outside. We agree.

Defendant was charged with misdemeanor domestic battery regarding the September 3d incident. The jury ultimately acquitted defendant of this count. The evidence relating to this incident was as follows. Defendant and the victim were arguing outside, away from the house, while N.H. was inside getting ready for bed. According to N.H., it was dark outside at the time and his parents were some distance from the house. Based upon N.H.'s location inside the home while the argument and battery took place outside and away from the home, as well as the alleged nature of the battery, we find the

---

[4]The fact the 10-year-old child, months after the offense, testified he was "[a] little bit frightened" does not lessen the inference of mental suffering the jury was entitled to make based on the totality of the evidence.

13.

evidence was insufficient to support a finding of criminal negligence.  Thus, the conviction on this count must be reversed.

## II.    Sentencing Claims

Defendant claims the trial court committed several sentencing errors.  Specifically, he argues his sentence violated section 654, the section 294 fine was improperly imposed, and he is entitled to additional conduct credits in light of recent amendments to section 4019.  We will address each contention in turn.

### A.    Section 654 Issues

Defendant was sentenced on count 1, the assault with a deadly weapon charge, and given a concurrent sentence on count 2, the criminal threat charge.  In addition, the trial court sentenced defendant to consecutive eight-month terms on both the felon in possession count as well as the possession of the sawed-off shotgun charge.  He argues the sentences on the criminal threats count as well as one of the possessions of the firearm counts must be stayed pursuant to section 654.  We agree.

Section 654 provides in pertinent part:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)

> "The purpose of section 654 is to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime.  Although the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, the trial court may impose sentence for only one offense— the one carrying the highest punishment.  [Citation.]"  (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.)

Section 654 "does not allow any multiple punishment, including either concurrent or consecutive sentences."  (*People v. Deloza* (1998) 18 Cal.4th 585, 592.)  By its terms, section 654 applies where a person suffers from multiple punishments for a single criminal act or omission.  (*People v. Jones* (2012) 54 Cal.4th 350, 358 (*Jones*); *People v. Beamon* (1973) 8 Cal.3d 625, 637-638, overruled on other grounds in *People v. Mendoza*

14.

(2000) 23 Cal.4th 896, 908.) However, this provision also applies "when there is a course of conduct which violates more than one statute but constitutes an indivisible transaction." (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on other grounds in *People v. Correa* (2012) 54 Cal.4th 331, 334; see *People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)

Whether there was more than one intent or objective is a question of fact for the trial court and will be upheld on appeal if there is substantial evidence to support it. Where, as here, the trial court does not make an express finding, an implied finding the crimes were divisible inheres in the judgment and must be upheld if supported by the evidence.[5] (*People v. Nelson* (1989) 211 Cal.App.3d 634, 638.)

Keeping these standards in mind, we now address each of defendant's specific claims.

### 1.    *The sentence on count 2 must be stayed*

Defendant contends the trial court erred in imposing concurrent sentences on the assault with a deadly weapon and criminal threat charges because the counts were based upon the same conduct, namely, defendant's act of holding a knife to the victim's neck while threatening to cut her throat. Plaintiff claims the two counts involved separate intents and objectives and, therefore, the concurrent sentences were properly applied. We

---

[5]The trial court stated it agreed "with the People that the crime proved, pled and proven in that case is not 654, however, I think the aggregate sentence in this case as recommended is sufficient and I decline to add more time to [defendant's] sentence." However, the court never made any finding as to whether defendant harbored separate intents and objectives in committing the crimes. Likewise, when the prosecutor argued section 654 did not apply to count 2, she never articulated a theory as to why the section was inapplicable.

15.

agree with defendant and will order the sentence on count 2, criminal threats (§ 422), stayed.

Here the two crimes were committed contemporaneously. The evidence at trial established defendant and the victim were engaged in an argument when the victim made a remark that angered defendant. As a result, he immediately grabbed the victim by the neck and pushed her. Defendant then obtained a knife and advanced toward the victim. He held the knife approximately six inches from her and told her he was going to cut her throat. Thus, defendant committed the crime of making a criminal threat while he was also assaulting the victim with the knife during a single act. As we have previously noted, a single act may only be punished once, even if a defendant harbors separate intents. (*Jones*, *supra*, 54 Cal.4th at p. 358; *People v. Louie* (2012) 203 Cal.App.4th 388, 396, 399.)

Even if we were to find that holding the knife and uttering the words were separate acts, multiple punishments are only proper if substantial evidence supports the conclusion defendant harbored separate intents and objectives. Plaintiff argues that although defendant committed the threat while committing the assault with a deadly weapon, separate intents were inferable from the circumstances. Specifically, plaintiff contends the threat was made to frighten the victim, while the assault was intended to punish her for her remark that defendant was a bad father. We disagree. In making this argument, plaintiff notes defendant grabbed the victim by the throat and pushed her backwards. However, this action is not the act that was the subject of the assault with a deadly weapon. The assault with a deadly weapon did not occur until defendant brandished the knife and threatened to slice the victim's throat.

When we consider only the acts which were subject to the offenses, it is clear defendant harbored only a single intent. Defendant's action of holding a knife up to the victim's neck while threatening to use that very knife to cut her throat was clearly meant to terrorize her. Each crime was a means of committing the other offense and advanced

16.

the same objective: instilling fear in the victim. The threat, in short, was made to complete the assault.

Our conclusion that defendant's actions were pursuant to one objective, i.e., to place the victim in fear for her life, is bolstered by the prosecutor's closing argument. In discussing the criminal threats charge, the prosecutor argued defendant intended for the victim to take his words as a threat on her life because he was holding a knife to her throat at the time. Because appellant harbored a single intent in committing both the assault and the criminal threats, the sentence for criminal threats must be stayed. (See *People v. Louie*, *supra*, 203 Cal.App.4th at pp. 394, 399 [pointing a gun at victim, calling her "'a cop-calling bitch,'" and threatening her constituted a single act within the meaning of § 654 and defendant could not be punished for both crimes]; *People v. Mendoza*, *supra*, 59 Cal.App.4th at pp. 1345-1346 [defendant's statement to victim that resulted in convictions for dissuading a witness and criminal threats was made with single intent].)

### 2.    *The sentence on either count 3 or 4 must be stayed*

Defendant was convicted of being a felon in possession of a firearm as well as possessing a sawed-off shotgun. It is undisputed defendant possessed a single firearm and the evidence supporting the two counts was identical. Defendant argues his separate punishment for both crimes runs afoul of section 654. We agree.

Recently, the California Supreme Court addressed this very issue. In *Jones*, *supra*, 54 Cal.4th 350, police officers searched the car the defendant, a felon, was driving and found a loaded .38-caliber revolver that was not registered to him. He told the officers he bought the gun three days earlier for protection. The defendant was convicted of possession of a firearm by a felon, carrying a readily accessible, concealed and unregistered firearm, and carrying an unregistered firearm in public. He was separately sentenced for each offense. (*Id.* at p. 352.) Analyzing the conflicting appellate authority, *Jones* held "that a single possession or carrying of a single firearm on a single occasion may be punished only once under section 654." (*Id.* at p. 357.) The court further

17.

concluded, in accordance with the plain language of the statute that "[s]ection 654 prohibits multiple punishment for a single physical act that violates different provisions of law." (*Id.* at p. 358.)

Plaintiff attempts to distinguish *Jones* by arguing defendant's conduct here constituted multiple acts because there was some evidence at trial that defendant possessed the shotgun on both September 23 and September 24. However, this argument was addressed and rejected in *Jones*. Initially, we note the *Jones* court found the defendant's conduct in possessing the firearm and carrying it was a single act. (*Jones*, *supra*, 54 Cal.4th at p. 359.) In addressing the argument, the court explained the defendant was charged with possessing the gun on a single day, and the verdicts found the defendant guilty as charged. Further, the prosecution's argument was centered on the defendant's possession of the gun on the date charged. Although the prosecution referenced the defendant's admission he bought the weapon three days earlier, this was done to show the defendant knowingly possessed the gun, not to premise his liability on an earlier possession. (*Ibid.*)

Likewise here, defendant was charged specifically with possessing the gun "on or about September 24, 2011," in both counts. The evidence at trial was centered upon the fact the gun was found in the home on that date and the fact defendant admitted to the officer there was a gun in the home. Plaintiff's argument is based upon two brief references the prosecutor made during closing argument. In describing the meaning of possession, the prosecutor stated, "I have to prove that he had the ability to control the gun, but I don't have to prove that somebody saw him actually holding it, although [the victim] said she saw him holding it." Later in arguing the element that defendant knew what he possessed was a firearm, the prosecutor stated,

> "And how do we know that [defendant] knew that? Well, if you remember [the victim's] testimony, she said that she believed that he had the shotgun there at the house because he was going to fix it. Well, in order to fix a gun, you have to have some basic knowledge of how a gun works and what a gun does."

Considering these references in the totality of the evidence, it is clear the argument was limited to defendant's possession on September 24.

Although there were different triers of fact as to the charges of possession of a sawed-off shotgun and the possession of a firearm by a felon, we note the evidence presented as to the two charges was identical. Indeed, prior to trial, the court specifically asked the prosecutor if she would like to introduce any additional evidence to support the possession of a firearm by a felon charge that was not being introduced to the jury regarding the possession of a sawed-off shotgun charge. The prosecutor stated she would not need to introduce any additional facts other than the stipulation that defendant had been previously convicted of a felony, because the evidence regarding the two counts was "identical." Further, when the issue regarding the felon in possession of a firearm charge was submitted to the court, the prosecutor declined to make any additional arguments that were not already made to the jury. As this case is indistinguishable from *Jones*, we are bound to follow *Jones* here. (*Auto Equity Sales*, *Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Even if we were to agree with plaintiff that *Jones* is distinguishable from this case and defendant's possession of the firearm over the course of two days constituted two acts, we would still find dual punishment would fall within section 654's proscription. On this point *People v. Atencio* (2012) 208 Cal.App.4th 1239 is instructive. There the defendant was convicted of grand theft of a firearm as well as possession of a firearm by a felon. The evidence established the defendant had stolen the firearm and kept it until the next day when he abandoned it. (*Id.* at pp. 1241-1242.) The court addressed whether the defendant could be punished for both counts. In answering the question in the negative, the court explained that even if the defendant's conduct could be considered two acts under *Jones*, section 654 would still bar multiple punishments because the conduct involved the same course of conduct with a singular intent and objective. (*People v. Atencio*, *supra*, at pp. 1243-1245.) The court was unpersuaded by the argument the defendant harbored separate intents to both take the gun and then separately

19.

possess it. The court noted the "fact that defendant kept possession of the gun for a period of 24 hours did not, without more, alter his intent and objective such that his course of criminal conduct can be deemed to consist of more than one act for purposes of section 654." (*Id*. at p. 1244.) Similarly here, defendant's mere possession of the firearm over the course of two days[6] clearly constitutes a course of conduct with a single intent and objective. Thus, defendant may only be punished once for the conduct. We will remand the case to the trial court to determine which count will be sentenced and which count will be stayed.

### B. Section 294 Fine

Defendant was ordered to pay a $1,000 fine pursuant to section 294, subdivision (a). That section provides that the court may impose a fine of up to $1,000 for a misdemeanor violation of section 273a. Defendant was convicted of two counts of section 273a, subdivision (b), misdemeanor child endangerment, as recounted above. Defendant argues the reversal of that count requires the fine be stricken. Because we have determined that one count of misdemeanor child endangerment must be reversed, we are in partial agreement with defendant's argument.

As defendant remains convicted of one count of child endangerment, a fine under this section is entirely proper. However, we note that when the trial court imposed the fine, defendant stood convicted of two counts. There is no indication on the record as to what portion of the fine, if any, related to count 7, which must be reversed. Consequently, as conceded by plaintiff, we must remand the case so the trial court may determine the amount of the fine as it relates to count 5 only.

---

[6]While there was a reference during the trial that defendant had possessed the gun "at one time," we note this could not support a finding of multiple acts on this record. There was never a reference as to when that time was, nor was there any charge reflecting any possession on any other date.

20.

## C. Section 4019 Conduct Credits

Defendant's final contention on appeal is that additional presentence credits should be awarded to him based upon the amendments to section 4019, operative October 1, 2011. He argues failure to award the additional credit constitutes a violation of equal protection principles. This court has previously addressed, and rejected, the equal protection arguments raised here by defendant in our decision in *People v. Ellis* (2012) 207 Cal.App.4th 1546 (*Ellis*), review denied October 31, 2012.

Section 4019, subdivision (h) specifically states that the changes increasing credits were to apply prospectively only. In *Ellis*, we concluded that the intent of the Legislature "was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011." (*Ellis*, *supra*, 207 Cal.App.4th at p. 1553.) It is undisputed that defendant's offenses were committed before this date.

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally." (*People v. Brown* (2012) 54 Cal.4th 314, 328.) Contrary to defendant's contention, the amendments to section 4019, operative October 1, 2011, do not treat similarly situated groups in a disparate manner. (*Ellis*, *supra*, 207 Cal.App.4th at pp. 1551-1552.) Rather, the amendments to section 4019 address "'*future conduct* in a custodial setting by providing increased incentives for good behavior.'" (*Ellis*, *supra*, at p. 1551.) Thus, prisoners serving time before and after the effective date of a statute affecting conduct credits are not similarly situated for purposes of equal protection analysis. (*People v. Brown*, *supra*, at pp. 329-330.) The correctional purpose of a statute that rewards behavior is not served by rewarding prisoners who served time in custody prior to the effective date of the incentives because they could not have modified their behavior in response to the incentives. (*Id.* at pp. 328-329.) Because defendant fails to show that section 4019 treats "similarly situated" groups unequally, he asserts no cognizable equal protection claim.

Likewise, defendant's argument that he is entitled to enhanced conduct credits for the period between October 1, 2011, and the date he was subsequently sentenced was also

considered and rejected in *Ellis*. As we explained in *Ellis*, the statutory language on this point is not ambiguous.[7] (*Ellis*, *supra*, 207 Cal.App.4th at pp. 1552-1553.) Thus, for the reasons stated in *Ellis*, we reject defendant's claims.

## DISPOSITION

The conviction on count 7, misdemeanor child endangerment, is reversed. The trial court is ordered to impose a section 654 stay on count 2, criminal threats (§ 422). In addition, the sentence for either count 3, possession of a sawed-off shotgun (former § 12020, subd. (a)) or count 4, possession of a firearm by a felon (former § 12021, subd. (a)(1)) must be stayed pursuant to section 654. The case is remanded to the trial court to resentence the defendant accordingly and to determine the amount of the section 294 fine as it relates to count 5, misdemeanor child endangerment (§ 273a, subd. (b)) occurring on September 24, 2011. In addition, we note defendant's birth date is incorrect as listed on the abstract of judgment. The trial court is ordered to prepare an amended abstract of judgment reflecting the resentencing and to forward copies to the Department of Corrections and Rehabilitation. In all other respects the judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
POOCHIGIAN, Acting P.J.


_____
FRANSON, J.

---

[7]We note *People v. Olague* (2012) 205 Cal.App.4th 1126, the case upon which defendant relies, was granted review on August 8, 2012, S203298, review was subsequently dismissed, and the case was remanded on March 20, 2013, in light of the court's opinion in *People v. Brown*, *supra*, 54 Cal.4th 314. Thus, *Olague* may no longer be cited as precedent. (Cal. Rules of Court, rules 8.1105(e)(1), 8.1115(a).)