OPINION OF THE COURT
 

 Wesley, J.
 

 On March 7, 1997, defendant Theodore Johnson violently attacked his ex-girlfriend Vanessa Parker as she walked home from the supermarket with her three daughters. Defendant approached Parker and struck her in the back of the head, knocking her against a fence. The baby carriage Parker was wheeling, carrying their child, was also knocked over. Parker’s two older children, 7 and 12 years old, immediately began to cry. Defendant yelled and cursed at Parker about previously putting him in jail (Parker already had an order of protection against defendant in connection with a prior harassment incident). He grabbed her by the back of the neck, dragged her to her apartment entrance, ordered her to unlock the apartment and knocked her head against the door.
 

 Parker’s 12-year-old daughter picked up the baby carriage and the children followed them inside. Once inside, defendant pushed Parker up the steps into the apartment, again causing her to fall. He continued his cursing, telling her that he would “leave [her] in the house for dead” and then she would “see
 
 *371
 
 how [her] children would like being motherless.” After entering the apartment, the children went directly to their bedroom. Defendant followed Parker into the living room, and continued to beat her with his hands, feet and a metal pipe. Defendant also threw cups, plates and glasses at the walls and at Parker. He continued his verbal abuse, cursing and yelling at Parker for calling the police about past incidents of abuse. Trapped in their room, the children could hear the glass breaking, Parker’s screams and defendant’s yelling. Defendant’s reign of terror lasted for over 10 hours. Parker was finally able to sneak out of the apartment and call the police. Only after defendant’s arrest did the children emerge from the bedroom, where they were exposed to broken glass and debris strewn around the living room. Later, when defendant was in jail awaiting trial, he threatened to beat Parker if she did not drop the charges against him.
 

 After a nonjury trial, defendant was convicted of two counts of endangering the welfare of a child, intimidating a victim or witness, menacing and a number of felonies related to the order of protection. With regard to the felonies, Supreme Court sentenced defendant as a second felony offender. The Appellate Division modified the judgment by reversing defendant’s convictions for endangering the welfare of a child, holding that the evidence was legally insufficient, while sustaining defendant’s second felony offender adjudication. A Judge of this Court granted both the People and defendant leave to appeal.
 

 On the People’s appeal, we are asked to determine whether the evidence was legally sufficient to support defendant’s conviction for endangering the welfare of a child when his actions were not specifically directed at the children. The People contend that the statute is written broadly enough to cover conduct directed at others that is likely to cause harm to children. Under the facts of this case, we agree.
 

 Penal Law § 260.10 (1) provides that a person endangers the welfare of a child when “[h]e knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old.” Actual harm to the child need not result for criminal liability; it is “sufficient that the defendant act in a manner which is
 
 likely
 
 to result in harm to the child,
 
 knowing
 
 of the likelihood of such harm coming to the child”
 
 (People v Simmons,
 
 92 NY2d 829, 830 [emphasis added]).
 

 Nothing in the statute restricts its application solely to harmful conduct directed at children
 
 (see, People v Bergerson,
 
 17
 
 *372
 
 NY2d 398, 401 [noting that the prior version of statute was intended to be broad in scope]). The statute is broadly written and imposes a criminal sanction for the mere “likelihood” of harm. Moreover, the language provides that defendant “knowingly” act in such a manner, further suggesting that the statute does not require that the conduct be specifically directed at a child; rather, a defendant must simply be
 
 aware
 
 that the conduct may likely result in harm to a child, whether directed at the child or not (see, Penal Law § 15.05 [2]).
 

 Defendant would rewrite the statute. We have previously noted that when a statute imposes criminal liability for knowingly disregarding a risk, it does not require a particular outcome or actions aimed at a specific individual; the crime is solely defined by the risk of injury produced by defendant’s conduct
 
 (see, People v Davis,
 
 72 NY2d 32, 36-37). The same can be said here. Endangering the welfare of a child is not defined by specifically targeted acts or individuals, but by conduct which a defendant knows will present a “likelihood” of harm to a child (i.e., with an awareness of the potential for harm).
 

 We reject defendant’s contention that applying the statute to conduct not specifically directed at children will result in a wild proliferation of prosecutions based on bad parenting or the exposure of children to inappropriate behavior. Here, defendant’s conduct could hardly be characterized as bad parenting — or indeed parenting at all. Moreover, the statute has been in place for over 30 years. The Legislature specifically recognized that behavior that was
 
 likely
 
 to produce harm to a child’s physical, mental or moral well-being fell within its sweep as long as the defendant was
 
 aware
 
 of its potential for harm to a child. The Legislature’s response to conduct that could cause harm to children has not produced a clarion call for legislative reform of the statute; we will not supplant that function by judicial stitchery.
 

 The adverse effects of domestic violence on children have been well documented over the past two decades and have been recognized by all branches of our government in New York.
 
 *
 
 In 1996, the Governor approved an act to amend the Domestic Relations Law and the Family Court Act to require
 
 *373
 
 courts to consider domestic violence when rendering child custody and visitation determinations. He noted that “[t]he victims of domestic violence are not limited to those who are actually battered by spouses, for the evidence is overwhelming that those who batter their spouses inflict tremendous harm on their children. * * * [D]omestic violence causes great psychological and developmental damage to children even when they are not themselves physically abused” (Governor’s Approval Mem to L 1996, ch 85, 1996 McKinney’s Session Laws of NY, at 1858, 1859). Some trial courts in child endangerment prosecutions have also explicitly recognized the overwhelming evidence of harm to children exposed to domestic violence
 
 (see, e.g., People v Malone,
 
 180 Misc 2d 744).
 

 Viewing all the evidence and the inferences which may be drawn in the light most favorable to the People, as we are obliged to do, we conclude that a rational trier of fact could have reasonably determined that defendant’s assaultive conduct in this case created a likelihood of harm to the children of which he was aware. Here, the children saw defendant approach their mother and strike her down in the street, whereupon they immediately started crying. In their immediate presence, the defendant then threatened to kill their mother. For over 10 hours they hid in their bedroom, listening to defendant’s yelling and cursing, their mother’s screams and the sounds of breaking glass.
 

 To the extent that some courts have determined that section 260.10 (1) requires that a defendant’s conduct must be directly focused upon the child, or that evidence of a child witnessing a severe act of violence is insufficient as a matter of law to support a conviction under this statute, those decisions are not to be followed
 
 (see, People v Carr,
 
 208 AD2d 855,
 
 appeal after new trial
 
 229 AD2d 446,
 
 lv denied
 
 88 NY2d 1067;
 
 People v Suarez,
 
 133 Misc 2d 762). We reiterate, however, that each case is fact specific
 
 (see, People v West,
 
 271 AD2d 806;
 
 People v Brooks,
 
 270 AD2d 206,
 
 lv denied
 
 95 NY2d 794;
 
 People v Parr,
 
 155 AD2d 945,
 
 lv denied
 
 75 NY2d 870 [all holding that a defendant who performs a significant act of domestic violence against a mother in the presence of a child is guilty of endangering the welfare of that child]).
 

 
 *374
 
 With respect to defendant’s appeal, the issues presented either lack merit or are unpreserved.
 

 Accordingly, the order of the Appellate Division should be modified in accordance with the opinion herein, and the case remitted to the Appellate Division for consideration of the facts and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick and Rosenblatt concur.
 

 Order modified in accordance with the opinion herein and case remitted to the Appellate Division, Second Department, for consideration of the facts (CPL 470.25 [2] [d]; 470.40 [2] [b]) and, as so modified, affirmed.
 

 *
 

 Several social science and psychological studies have noted the profound adverse effect on children who witness domestic violence, including development of post-traumatic stress disorder and other severe emotional and behavioral problems (see,
 
 e.g.,
 
 Stone and Fialk,
 
 Criminalizing the Exposure of Children to Family Violence: Breaking the Cycle of Abuse,
 
 20 Harv Women’s LJ 205; Tomkins
 
 et al., The Plight of Children Who Witness Woman Batter
 
 
 *373
 

 ing: Psychological Knowledge and Policy Implications,
 
 18 Law & Psychol Rev 137, 143-154). Female children who witness parental abuse are also more likely to be abused themselves as adults, and male children are more likely to replicate the witnessed behavior by becoming abusers (Tomkins,
 
 op. cit.,
 
 at 150-151).