[No. C051500. Third Dist. Sept. 27, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS CORTEZ BURTON, Defendant and Appellant.

## COUNSEL

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, J. Robert Jibson and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DAVIS, Acting P. J.**—A jury convicted defendant Carlos Cortez Burton of torture, aggravated mayhem, corporal injury, and misdemeanor child endangerment. (Pen. Code, §§ 206, 205, 273.5, subd. (a), 273a, subd. (b).)[1] On appeal, defendant contends there was insufficient evidence to support (1) his conviction for torture; (2) his conviction for child endangerment; and (3) the enhancement allegations that he used a dangerous or deadly weapon. (§ 12022, subd. (b)(1).) We disagree and affirm the judgment.

 In so doing, we conclude that a parent may be convicted of misdemeanor child endangerment under section 273a, subdivision (b), by engaging in serious domestic violence against the other parent while aware that his or her child is at the scene.

### BACKGROUND

Defendant and the victim, Shanita S., have had a stormy relationship dating back to 1994. Defendant had threatened Shanita multiple times, sometimes with a gun. They had lived together off and on and have two sons. In 2004, Shanita and the children moved from Arkansas to Sacramento after defendant threatened to "hurt" her if she stayed in town. Shortly thereafter, defendant moved to Sacramento and eventually moved in with Shanita because Shanita wanted the children to be near their father. Several days before the attack that is at issue on appeal, defendant accused Shanita of cheating on him. Two days before the attack, Shanita asked defendant to move out.

---

[1] Undesignated section references are to the Penal Code.

In the early morning of May 20, 2005, Shanita was preparing to drive to work with her two children. She had placed the younger son, then two years old, in his car seat while the older son, then eight, had gone behind a wall adjacent to the passenger's side of the car to urinate (he could no longer hold it).[2] Shanita then walked around to the driver's side of the car and found defendant crouched near the front tire. As Shanita described it, defendant stood, punched her three to four times, then ran away after she lost her balance and fell. Shanita soon realized defendant had inflicted a series of deep cuts to her face. Shanita was hospitalized and treated with over 200 stitches. She is permanently disfigured.

At trial, defendant presented evidence that he was sleeping at the home of a friend at the time of the incident.

DISCUSSION

### 1. *Standard of Review*

In reviewing the sufficiency of evidence in a criminal appeal, we review the record in the light most favorable to the judgment to determine whether there is substantial evidence such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) An appellate court must presume the existence of every fact the trier could reasonably deduce from the evidence. (*People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

### 2. *Torture Conviction*

Defendant contends there is insufficient evidence to support his torture conviction under section 206.

Section 206 provides: "Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture.[3] [¶] The crime of torture does not require any proof that the victim suffered pain."

 Torture has two elements: "(1) the infliction of great bodily injury on another; and (2) the specific intent to cause cruel or extreme pain and

---

[2] Defendant's child endangerment conviction relates only to his older son. To protect his identity, we shall refer to him in part 3 of the Discussion as defendant's "older son" or "the minor."

[3] Section 12022.7, subdivision (f), defines "great bodily injury" as "a significant or substantial physical injury."

suffering for revenge, extortion or persuasion or any sadistic purpose." (*People v. Lewis* (2004) 120 Cal.App.4th 882, 888 [16 Cal.Rptr.3d 498].) It is uncontested that defendant inflicted great bodily injury. The issue is whether substantial evidence supports a finding of the second element of torture.

### a. *Intent to cause cruel or extreme pain and suffering*

Defendant contends the evidence establishes only the intent to disfigure, rather than the intent to cause cruel or extreme pain and suffering. We disagree.

Courts have interpreted intent to inflict "cruel" pain and suffering as intent to inflict extreme or severe pain. (*People v. Aguilar* (1997) 58 Cal.App.4th 1196, 1202 [68 Cal.Rptr.2d 619].) Absent direct evidence of such intent, the circumstances of the offense can establish the intent to inflict extreme or severe pain. (*People v. Hale* (1999) 75 Cal.App.4th 94, 106 [88 Cal.Rptr.2d 904] [smashing victim's teeth out with a hammer constitutes torture under section 206]; *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245 [75 Cal.Rptr.2d 40].)

A jury may consider the severity of the wounds in determining whether a defendant intended to torture. (*People v. Mincey* (1992) 2 Cal.4th 408, 432–433 [6 Cal.Rptr.2d 822, 827 P.2d 388].) Here, defendant inflicted four deep cuts, each at least one and a half centimeters, to Shanita's face, and one to her tongue. The cuts went through the skin, through the underlying tissue, and down to the muscle.

Moreover, "scarring and disfigurement constitute strong circumstantial evidence of intent to inflict severe pain and suffering." (*People v. Baker* (2002) 98 Cal.App.4th 1217, 1224 [120 Cal.Rptr.2d 313].) The attack here permanently disfigured Shanita. On the right side of her face, she has two scars: one from the corner of her mouth running toward her ear, and another along the jaw line. On the left side of her face, a scar runs from the corner of her mouth down her neck.

Also, a jury may infer intent to cause extreme pain from a defendant who focuses his attack on a particularly vulnerable area, such as the face, rather than indiscriminately attacking the victim. (*People v. Quintero* (2006) 135 Cal.App.4th 1152, 1163 [37 Cal.Rptr.3d 884].) Here, defendant focused the attack on Shanita's face.

Finally, defendant's earlier threats to Shanita suggest the intent to cause extreme or severe pain. He had threatened to "kill [Shanita] or fuck her up," "hurt [her]," "bash [her] head in," "put [her] in a wheelchair," make her "pay."

Given the severity of the injuries, the scarring and disfigurement, the attack's focus on the face, and defendant's prior statements, we conclude there is sufficient evidence that defendant intended to cause cruel or extreme pain and suffering.

> **b.** *For revenge, extortion, persuasion, or for any sadistic purpose*

■ Defendant argues there is insufficient evidence to establish that he acted with sadistic intent. Section 206 requires that a defendant commit the act for "revenge, extortion, persuasion, or for any sadistic purpose."

Defendant concedes he intended to disfigure Shanita, but argues that such intent is not the same as acting with a sadistic purpose.

■ Black's Law Dictionary defines "sadism" as "a form of satisfaction . . . derived from inflicting harm on another." (Black's Law Dict. (5th ed. 1979) p. 1198.) By disfiguring Shanita, defendant intended to make her undesirable. He had threatened to "fuck her up where nobody else would want her" and "[he would] make sure no one ever want[ed] to look at [her] again." A jury could reasonably conclude that defendant disfigured Shanita to receive satisfaction and thus acted with a sadistic purpose.

The record also contains substantial evidence that defendant attacked Shanita for revenge. Shanita testified that she had asked defendant to move out two days before the attack, after he had repeatedly accused her of cheating. On his way out, defendant warned, "bitch, you'll pay." Earlier he had threatened, "if you're messing around, I'll kill you." On this evidence, a reasonable jury could conclude the attack was done for revenge.

Finding all elements met, we uphold the torture conviction under section 206.

### 3. *Misdemeanor Child Endangerment Conviction*

Defendant contends the evidence is insufficient that he violated section 273a, subdivision (b)—misdemeanor child endangerment. He argues that because his older son did not see the actual attack on Shanita, it did not occur in the minor's presence and was not directed at him; consequently, section 273a, subdivision (b), does not apply. We disagree.

Section 273a, subdivision (b), provides: "Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, [1] willfully causes or permits any child to suffer, or [2] inflicts thereon

unjustifiable physical pain or mental suffering, or [3] having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or [4] willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered, is guilty of a misdemeanor."[4] (See *People v. Sargent* (1999) 19 Cal.4th 1206, 1215 [81 Cal.Rptr.2d 835, 970 P.2d 409] (*Sargent*).)

The People charged defendant under the first two branches of section 273a, subdivision (b): (1) willfully caused or permitted his older son to suffer; and (2) inflicted on his older son unjustifiable mental suffering.

■ Section 273a encompasses a wide variety of situations and includes both direct and indirect conduct. (*People v. Smith* (1984) 35 Cal.3d 798, 806 [201 Cal.Rptr. 311, 678 P.2d 886]; see *People v. Valdez* (2002) 27 Cal.4th 778, 786–787 [118 Cal.Rptr.2d 3, 42 P.3d 511] (*Valdez*).) When the harm to a child is directly inflicted, the requisite mental state for the section 273a offense is general criminal intent. (*Valdez, supra,* 27 Cal.4th at p. 786; *Sargent, supra,* 19 Cal.4th at pp. 1215–1216, 1222, 1224 [general criminal intent is the intent to do the proscribed act].) When that harm is indirectly inflicted, the requisite mental state is criminal negligence. (*Valdez, supra,* 27 Cal.4th at pp. 781, 786–791; see also § 20 [in every crime there must exist act and intent, or act and criminal negligence].) Criminal negligence is aggravated, culpable, gross or reckless conduct that is such a departure from that of the ordinarily prudent or careful person under the same circumstances as to be incompatible with a proper regard for human life. (*Valdez, supra,* 27 Cal.4th at p. 783.) A defendant may be deemed to be criminally negligent if a reasonable person in his or her position would have been aware of the risk. (*Ibid.*)

Here, there is no suggestion that defendant intended to directly inflict suffering on his older son. As defendant points out, his older son was not physically injured or threatened during the attack on Shanita, nor was the minor near enough to be in danger of physical injury. The record suggests, as defendant asserts, that the minor did not see the actual attack. Based on these facts, defendant argues the attack did not occur in his older son's presence and was not directed at him. However, the minor was on the scene while the attack took place and witnessed its bloody immediate aftermath.

■ Defendant's conviction under section 273a, subdivision (b), then, rests on whether defendant indirectly inflicted harm on his older son by attacking Shanita while the minor was at the scene; more specifically, whether the

---

[4] The distinction between felony and misdemeanor child endangerment depends on whether the acts or omissions involved circumstances or conditions likely to produce great bodily injury or death to the child (if so, felony—§ 273a, subd. (a); if not, misdemeanor—§ 273a, subd. (b)).

evidence is sufficient that defendant willfully caused or permitted the minor to suffer, or inflicted unjustifiable mental suffering on him, and whether defendant did so with a mental state of criminal negligence toward the minor. The term "willfully" in the section 273a context of indirect conduct implies simply a purpose or willingness to commit the act or make the omission referred to; an act or omission amounting to criminal negligence can, in limited contexts, constitute a willful violation of the law. (*Valdez, supra,* 27 Cal.4th at pp. 787–788, 790.)

The record contains substantial evidence that defendant's attack on Shanita caused or inflicted on his older son unjustifiable mental suffering. Following the attack, the minor screamed, "we have to go, we have to get out of here, we have to leave, he's going to come back"; the boy, who was only eight years old at the time, actually tried to put Shanita's car in reverse himself. We must bear in mind that the attacker was not just anyone, but the minor's father, and the victim was not just anyone, but the minor's mother, whose face had been slashed severely. Subsequently, the minor expressed his suffering by writing in his journal, "I hate my life. I wish I was dead by a gun or a knife. I wish I was never born. I hate my life." Before the attack, the minor never got in trouble at school; now he lands in trouble daily and sees a counselor weekly.

There is also sufficient evidence that defendant acted with criminal negligence toward the minor when he attacked Shanita. There is no doubt that defendant's attack on Shanita was a willful act, and that defendant's older son was at the scene. The record shows that at the time of the attack, defendant knew of the minor's presence. Before the attack, defendant crouched near the driver's side front tire of Shanita's car, where he would have been able to hear Shanita place the younger son in the car seat, and the older son say that he had to urinate. Additionally, Shanita had a consistent practice of leaving for work at the same time each day (presumably with the children in tow) for her 6:45 a.m. shift. Moreover, prior to the attack Shanita had left her work schedule on the refrigerator, in full view of defendant. As noted, defendant argues the attack did not occur in his older son's presence. But defendant's older son was at the scene of the attack and, as the People aptly put it, saw "the immediate and bloody results of [defendant's] handiwork."

Under the criminal negligence standard, defendant's conduct toward his older son was such a departure from that of the ordinarily prudent or careful person as to be incompatible with a proper regard for human life. A reasonable person would easily recognize that a child would endure unjustifiable mental suffering by being on the scene while his father slashed his mother's face several times, and then immediately seeing the horrible, bloody aftermath.

Defendant maintains that no published California case encompasses facts similar to those presented here. He is mistaken. In *People v. Pantoja* (2004) 122 Cal.App.4th 1 [18 Cal.Rptr.3d 492], the defendant was convicted of first degree murder and child endangerment after he killed his girlfriend in the presence of their daughter. (*Id.* at p. 3.) The defendant in *Pantoja* argued that, under the single act/multiple punishment proscription of section 654, he could not be separately punished for the child endangerment conviction because, in killing his girlfriend, he had not directed his acts at his daughter and therefore had not committed a crime of violence against her. (*Pantoja, supra,* at pp. 15–16.) The *Pantoja* court rejected this argument, noting that section 654 does not apply to multiple victims of a single violent act, and reasoning that there was "no doubt that defendant's acts harmed [the daughter]" and the defendant could be "punished separately for that separate crime" of violence. (*Pantoja, supra,* at p. 16; see also *People v. Martin* (2005) 133 Cal.App.4th 776, 782–783 [35 Cal.Rptr.3d 105] [discussing *Pantoja* with approval].)

We also find a similar factual and legal scenario in *People v. Johnson* (2000) 95 N.Y.2d 368 [718 N.Y.S.2d 1, 740 N.E.2d 1075] (*Johnson*). There, the defendant was convicted of two counts of child endangerment after he attacked his ex-girlfriend as she walked home with her three daughters. (740 N.E.2d at pp. 1075–1076.) The children followed as the defendant dragged their mother to her apartment. (*Id.* at p. 1075.) The children were trapped in their bedroom as they listened to the defendant abuse their mother for over 10 hours. (*Id.* at pp. 1075–1076.) The New York high court affirmed the endangerment convictions, holding that the applicable statute there was broad enough to cover conduct directed at others that is likely to cause harm to children.[5] (*Id.* at p. 1077.) Although the brutal attack on Shanita did not last 10 hours, the presence of his eight-year-old son at the scene of the attack—who saw the immediate and bloody results of his father's handiwork on his mother's face—likely caused similar mental suffering.

 Children often witness domestic violence. (See Comment, *The Child Witness as a Victim of Domestic Violence: Prosecuting the Batterer Under California's Child Abuse Statute* (1998) 19 J. Juv. L. 196.) There are up to six million victims of domestic violence annually in the United States and half of these incidents occur in the presence of children. (*Ibid.*) Children witnessing such violence suffer adverse effects similar to victims of direct physical and sexual abuse. (*Id.* at p. 197; see also *Johnson, supra,* 740 N.E.2d at p. 1077 & fn.) Section 273a applies to suffering resulting from direct physical and sexual abuse. It follows that section 273a should also protect children from actions that indirectly cause similar suffering.

---

[5] The New York statute specified that a person endangers the welfare of a child when " '[h]e knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old.' " (*Johnson, supra,* 740 N.E.2d at p. 1076.)

We conclude that defendant's conviction under section 273a, subdivision (b), is supported legally and factually.

### 4. *Use of a Deadly or Dangerous Weapon*

Defendant contends there is insufficient evidence to support the weapon use enhancements on his convictions for torture, aggravated mayhem and corporal injury. (§ 12022, subd. (b)(1).) Defendant raises the possibility that he did not use a weapon, but rather that Shanita's injuries resulted from a sharp or ribbed edge on the gloves he allegedly was wearing. We disagree.

Section 12022, subdivision (b)(1) provides: "Any person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense."

There are two classes of dangerous or deadly weapons: instrumentalities that are weapons in the strict sense, such as guns and blackjacks; and instrumentalities which may be used as weapons but which have nondangerous uses, such as hammers and pocket knives. (*People v. Raleigh* (1932) 128 Cal.App. 105, 108 [16 P.2d 752].) Instrumentalities in the first category are " 'dangerous or deadly' " per se. (*Ibid.*) An instrumentality in the second category is only " 'dangerous or deadly' " when it is capable of being used in a " 'dangerous or deadly' " manner and the evidence shows its possessor intended to use it as such. (*Id.* at pp. 108–109.)

Defendant correctly notes there is no evidence that the instrument he used falls into the first category. Shanita's testimony described only gloved hands. Whatever caused Shanita's injuries fell into the second category. However, this does not preclude a jury from finding that it was a dangerous or deadly weapon.

We need look no further than *People v. Alvarez* (1996) 14 Cal.4th 155 [58 Cal.Rptr.2d 385, 926 P.2d 365], which held that a jury could properly infer the use of a dangerous or deadly object from the victim's injuries. In *Alvarez*, a woman was hit from behind with an unknown object. (*Id.* at p. 179.) There, the nature of the injury established the use of a dangerous or deadly weapon (the victim received 20 stitches). (*Id.* at p. 225.) Here, Shanita received over 200 stitches. Moreover, a plastic surgeon testified that based on the nature of Shanita's injuries, he "believe[d] it was a sharp object. A hand or blunt object would most likely not cause . . . a direct linear laceration with sharp edges." A police officer at the scene reached a similar conclusion. He testified to looking for "[s]ome sort of knife or possibly a box cutter" after seeing Shanita's injuries.

Based on the injuries and circumstances, the jury could reasonably conclude that defendant used a dangerous or deadly weapon.

## Disposition

The judgment is affirmed.

Raye, J., and Hull, J., concurred.

A petition for a rehearing was denied October 19, 2006, and appellant's petition for review by the Supreme Court was denied January 17, 2007, S147790. Moreno, J., did not participate therein.