Filed 2/25/21  P. v. Gomez CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059270 |
| v. | (Super. Ct. No. 18WF0033) |
| ADRIAN GOMEZ, | O P I N I O N |
| Defendant and Appellant. | |

\*    \*    \*

Appeal from a judgment of the Superior Court of Orange County, Julian W. Bailey, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*    \*    \*

## 1. Introduction

Adrian Gomez filed a notice of appeal from a judgment entered following a jury verdict convicting him of assault with a deadly weapon and finding true the allegation that he inflicted great bodily injury on the victim. His appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) setting forth the facts of the case and requesting that we review the entire record. Pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), counsel identified one issue to assist us in conducting our independent review. Gomez was granted 30 days in which to file a supplemental brief on his own behalf. He has not filed a supplemental brief.

We have examined the record in accordance with our obligations under *Wende* and *Anders* and have found no arguable issues on appeal. The issue suggested by counsel does not have merit. We therefore affirm.

## 2. Jury Verdict and Sentencing

Gomez was charged by information with one count of attempted murder in violation of Penal Code sections 187, subdivision (a) and 664, subdivision (a) (count 1) and one count of assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1) (count 2). The information alleged Gomez was on parole when he committed the offenses. (*Id.*, § 1203.085, subd. (b).) The information alleged three enhancements: (1) as to both counts, infliction of great bodily injury on the victim (*id.*, § 12022.7, subd. (a)); (2) as to count 1, personal use of a deadly weapon during the commission of the offense (*id.*, § 12022, subd. (b)(1)); and (3) as to count 1, commission of the offense willfully, deliberately, and with premeditation (*id.*, § 664, subd. (a)). The information also alleged that Gomez previously had been convicted of a strike offense (*id.*, § 667, subds. (d), (e)(1)) and a serious felony (*id.*, § 667, subd. (a)(1)), and had served a prior prison term (*id.*, § 667.5, subd. (b)).

The jury found Gomez not guilty of attempted murder and of the lesser included offense of attempted voluntary manslaughter. The jury found Gomez guilty of

assault with a deadly weapon and found true the allegation that he had inflicted great bodily injury on the victim. Gomez waived his right to a jury trial on the prior conviction allegations. The trial court found the prior strike, prior serious felony, and prior prison term allegations true and that Gomez was on parole when he committed the charged offenses.

After denying Gomez's motion to dismiss the prior strike, the trial court sentenced Gomez to the upper term of four years (Pen. Code, § 245, subd. (a)(1)) which was doubled to eight years pursuant to Penal Code sections 667, subdivisions (d) and (e)(1) and 1170.12, subdivisions (b) and (c)(1). The court imposed a consecutive three-year term for the great bodily injury enhancement and a consecutive five-year term for the prior serious felony. The total term was 16 years in prison. The court dismissed the true finding to the prior prison term enhancement. Gomez was awarded 937 days of actual custody credits and 140 days of conduct credits, for a total of 1,077 days of credit. The court imposed the following fines and fees: (1) a $300 parole revocation restitution fine (*id*., § 1202.45) (suspended); (2) a $300 restitution fine (*id.*, § 1202.4, subds. (a), (b) & (d)); (3) a $40 court operations assessment (*id*., § 2465.8); and (4) a $30 criminal conviction assessment (Gov. Code, § 70373).

**3. Facts**

Gomez lived with his mother in a single family home in Garden Grove. Armando Salmeron and his wife and three children moved into the house in late 2017 because they had been evicted from their home and had no other place to live. Gomez's mother was the cousin of Salmeron's wife. Salmeron had known Gomez since they were children.

On the morning of January 2, 2018, Salmeron was outside and separating aluminum cans from plastic materials. Gomez exited the house through the kitchen door, walked over to Salmeron, who was bent down, and started stabbing him in the head with a pocket knife. Salmeron screamed, asked what he had ever done to Gomez and then,

after turning to face Gomez, asked what was going on and whether Gomez intended to kill him.  Gomez said nothing and continued to stab Salmeron with the knife.

Salmeron noticed blood streaming from the right side of his head near his temple.  He wrested the knife from Gomez's hand by biting Gomez on the forearm about three times.  Gomez threw Salmeron to the ground and struck him with a closed fist.  Salmeron, with the knife in his hand, managed to get up and run to the street, where he encountered a young man and young woman.  Salmeron asked them to call the police and told them, "[t]his guy wants to kill me."

The young man, Max Ruiz, and the young woman, his sister Sylvia Mendoza, had been driving to Enterprise Rent-A-Car.  Mendoza parked the car, and when Ruiz exited it, he heard someone screaming in English and Spanish for help.  Ruiz turned and observed Salmeron, with blood dripping from his head, standing in the street and screaming for help.  When Ruiz asked Salmeron what had happened, he replied, in Spanish, "[h]e's stabbing me."  Salmeron momentarily sat on the curb, then got up and walked to a child's table at a nearby house.

Ruiz saw Gomez run toward the house to which Salmeron had fled.  Ruiz looked at Gomez and asked, "[h]ey, what's going on?" and "[w]hat are you doing?"  Ruiz told Gomez the police were on their way.  Gomez left, walked up a driveway, temporarily disappeared from sight, reemerged, and took off running up the street.

Maria Delgado, who had known Gomez and his mother for 20 years, lived at a house across the street from Gomez's house.  Delgado heard people talking and banging loudly on the door.  She stepped outside into a little patio and saw Salmeron, seated at a small children's table, with a lot of blood on him.  He set a knife on the table and asked Delgado to get his children.

Garden Grove Police Officer Jeremy Morse arrived at the scene, where he found Salmeron seated at a table and bleeding profusely.  A black folding knife was next to him.  Police detective Richard Desbiens also arrived at the crime scene.  Video

4

surveillance footage from a medical supply store showed Gomez walking northbound on Brookhurst Street, then proceeding west across the northbound lane to the center median, and then continuing north.

Bharath Chakravarthy, an emergency department physician, treated Salmeron for his injuries. Salmeron had eight stab wounds or lacerations, including one just below the clavicle, one in the back of the head, and two to the right scalp.

## 4. Issue Suggested by Counsel

Gomez's counsel has brought the following issue to our attention: "Was the jury instruction for assault with a deadly weapon prejudicially erroneous because a pocket knife is not a deadly weapon as a matter of law?" The issue has no merit. An instrumentality that is not inherently dangerous, such a pocket knife, may be considered a dangerous or deadly weapon if it is capable of being used in a dangerous or deadly manner and the evidence shows its possessor intended to use it as such. (*People v. Burton* (2006) 143 Cal.App.4th 447, 457.) The jury was instructed consistently with this principle.

## 5. Disposition

The judgment is affirmed.

FYBEL, J.

WE CONCUR:

MOORE, ACTING P. J.

IKOLA, J.

5