Filed 8/23/23  P. v. Pruitt CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JARROD A. PRUITT,<br><br>        Defendant and Appellant. | A162580<br><br>(Contra Costa County<br>Super. Ct. No. 52007532) |

Defendant and appellant Jarrod A. Pruitt (appellant) appeals following his conviction of several charges stemming from an April 2020 domestic violence incident.  The parties agree the trial court's instructions erroneously permitted appellant to be convicted of child endangerment (Pen. Code, § 273a, subd. (b))[1] on a theory of indirect harm without a showing of criminal negligence.  We agree with respondent that the error was harmless.

PROCEDURAL BACKGROUND

In June 2020, the Contra Costa County District Attorney filed an information charging appellant with making criminal threats (§ 422, subd. (a); count one) with a deadly weapon enhancement (§ 12022, subd. (b)(1)); injuring a spouse, cohabitant, or person with a past or present dating relationship (§ 273.5, subd. (a); count two); assault by means likely to produce

---

[1] All undesignated statutory references are to the Penal Code.

great bodily injury (§ 245, subd. (a)(4); count three); and misdemeanor child endangerment (§ 273a, subd. (b); count four).

A jury found appellant not guilty of the three felony offenses alleged in counts one through three. On count two appellant was found guilty of the lesser included offense of misdemeanor battery of a person in a dating relationship (§ 243, subd. (e)(1)), and on count three he was found guilty of the lesser included offense of simple assault (§ 240). He was found guilty as charged on count four.

In April 2021, appellant was placed on four years' probation, with conditions including that he serve 45 days in jail. The present appeal followed.

FACTUAL BACKGROUND

In May 2019, Jane Doe 1 and her daughter, Jane Doe 2, moved in with appellant and his son at their home Richmond.

On April 12, 2020, at 12:37 a.m., Deputy Ryan Shaw was dispatched to the home appellant shared with Jane Doe 1 and the children.[2] The deputy contacted Jane Doe 1 and Jane Doe 2 (who was 10 years old) in the living room. Jane Doe 1's eyes were red, watery, and swollen. Both Jane Doe 1 and Jane Doe 2 were visibly shaken. Jane Doe 2 told the deputy, "I'm still shaking." The hallway between the bedroom and the bathroom was in "disarray," with shampoo and 20–50 pieces of broken glass on the ground. Jane Doe 1's clothing was covered with soap and shampoo.

At trial, Jane Doe 1 testified she had been in an on-and-off relationship with appellant for almost seven years. On the evening in question, Jane

---

[2] There was testimony at trial about several previous incidents of domestic violence by appellant, including an alleged strangulation earlier in the day. It is unnecessary to summarize that evidence to resolve the present appeal.

Doe 1 was with Jane Doe 2 in Jane Doe 2's bedroom watching cartoons. Appellant kicked in the door to the bedroom and started yelling, telling Jane Doe 1 not to touch his "scrunchy." Jane Doe 1 realized appellant was referring to his loofah sponge, and she explained that Jane Doe 2 had the same sponge, and that hers had been placed in the trash.

Jane Doe 1 moved into the hallway. Appellant grabbed shampoo and poured it on Jane Doe 1. Appellant grabbed Jane Doe 1's mirror from the bathroom and threw it at her. The mirror hit Jane Doe 1's chest and then shattered on the ground. When she bent over, shards of glass went into her eye. Appellant leaned in and threatened to slit Jane Doe 1's throat. He was holding a shard of glass from the broken mirror, and he whispered, "I could so fucking slit your throat right now."

Jane Doe 2 was at the bedroom door about two feet behind Jane Doe 1 during the incident. Jane Doe 2 yelled at appellant, "Please stop, what are you doing to my mommy." Appellant responded, "Shut up, you little fucking bitch." Appellant then went into his bedroom and later left the house.

At trial, Jane Doe 2 testified that, before the police arrived on the night in question, she and Jane Doe 1 were watching cartoons on the bed in her room. Appellant kicked in the door and it scared her. Appellant was swearing and yelling that they had thrown away his loofah. Appellant threw a "big fit," grabbed shampoo from the bathroom, and threw it on Jane Doe 1 while saying a "lot of curse words." Jane Doe 2 was standing two to three feet behind Jane Doe 1. She was watching what was happening and was very scared and crying. Appellant then grabbed Jane Doe 1's mirror from the

3

bathroom and threw it on the ground.  A shard of glass hit Jane Doe 1's eye.[3] Jane Doe 2 returned to her room and she heard appellant call her a "bitch."

DISCUSSION

Section 273a, subdivision (b) provides, "Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered, is guilty of a misdemeanor."

"Section 273a encompasses a wide variety of situations and includes both direct and indirect conduct.  [Citations.]  When the harm to a child is directly inflicted, the requisite mental state for the section 273a offense is general criminal intent.  [Citations.]  When that harm is indirectly inflicted, the requisite mental state is criminal negligence.  [Citations.]  Criminal negligence is aggravated, culpable, gross or reckless conduct that is such a departure from that of the ordinarily prudent or careful person under the same circumstances as to be incompatible with a proper regard for human life.  [Citation.]  A defendant may be deemed to be criminally negligent if a reasonable person in his or her position would have been aware of the risk." (*People v. Burton* (2006) 143 Cal.App.4th 447, 454.)

In the present case, the prosecution informed the court it was only proceeding on a direct child endangerment theory, and the parties agreed it

---

[3] Jane Doe 2 also testified appellant made a slicing motion across his throat with the glass and whispered, "I will slice."  Deputy Shaw testified that Jane Doe 2 did not describe hearing appellant threaten Jane Doe 1 or seeing him hold a piece of glass to his own throat.

4

was unnecessary to instruct the jury on criminal negligence. Nevertheless, the trial court instructed the jury on both direct and indirect theories of child endangerment. In particular, the court instructed the jury that the People were required to prove that "The defendant willfully inflicted unjustifiable physical pain or mental suffering on a child *or willfully caused or permitted a child to suffer unjustifiable physical pain or mental suffering*." (Italics added.) The court did not instruct the jury that respondent needed to prove appellant acted with criminal negligence under the indirect theory of child endangerment.

The parties agree the trial court erred in instructing the jury on the indirect theory of child endangerment without requiring a finding of criminal negligence. (See CALCRIM No. 823, Bench Notes [directing the trial court to instruct on criminal negligence where the jury is asked to determine whether the defendant "willfully caused or permitted a child to suffer"].) "Where a jury is instructed on alternate theories of liability, one legally valid and one legally invalid, a federal constitutional error has occurred. The defendant has been deprived of his or her right to 'a jury properly instructed in the relevant law.' [Citations.] The error therefore requires reversal unless we determine the error was harmless beyond a reasonable doubt." (*In re Lopez* (2023) 14 Cal.5th 562, 580.) "[T]he applicable test [is] as follows: ' "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" ' " (*Id.* at p. 581.)

We need not address whether the jury would have found beyond a reasonable doubt that appellant acted with criminal negligence in indirectly harming Jane Doe 2 because it is clear beyond a reasonable doubt any rational jury would have convicted appellant based on a direct theory of child endangerment, which was the focus of the closing arguments.

5

In closing, the prosecutor argued, "[D]id he willfully inflict unjustifiable mental suffering on [Jane Doe 2]? He didn't know where his sponge was, so what did he do? What any reasonable person would do, which is to kick open a door hard and start yelling and screaming at [Jane Doe 2] and her mom. And then start throwing soaps on her mom and throw a mirror and call a ten-year-old girl a bitch and scare the hell out of her. And 20 minutes later, her hands are still shaking when Deputy Shaw is talking to her. There is no way that this is justifiable mental suffering inflicted on this little girl."

Defense counsel also focused on the direct theory in his closing, arguing, "The language here concerns a willful infliction of unjustifiable mental suffering on the child. . . . I think everybody in this room hopefully would agree that it's awful for a kid to witness a fight . . . between their mother and their mother's boyfriend. Absolutely. But then we get back to this spectrum we talked about earlier - good, bad, or criminal conduct. . . . And the question is did [appellant] actually do anything to [Jane Doe 2]. I think it was [Jane Doe 1] who testified that [appellant] swore at her, but was this a willful infliction of unjustifiable mental suffering?"

Defense counsel's argument below disregarded the true scope of the mental suffering inflicted on Jane Doe 2 during the incident. As the prosecutor pointed out below, appellant kicked open the door to her bedroom and yelled about a sponge he apparently found in the trash. He then continued to rage and swear, and then threw and shattered a mirror while Jane Doe 2 stood only a few feet behind her mother. When Jane Doe 2 protested appellant's actions towards Jane Doe 1, appellant called the child a "bitch." Jane Doe 2 testified she was very scared and crying during the incident, and she told Deputy Shaw she was "still shaking" when he responded to the residence.

6

Appellant argues the not-guilty verdicts on the felony charges show the jury only selectively believed the evidence. But there is no basis to conclude any doubts involved the direct theory of child endangerment. The jury found appellant not guilty of making a criminal threat, which was based on appellant's alleged comment about slicing Jane Doe 1's throat. But Deputy Shaw testified Jane Doe 2 did not mention that when he interviewed her (see fn. 3, *ante*), which provided a basis for doubt as to that charge. In count two, the jury found appellant not guilty of inflicting an injury, which (as relevant on appeal) was based on redness in Jane Doe 1's eyes allegedly due to a shard of glass.[4] But the redness could also have been caused by crying. Finally, in count three, the jury found appellant not guilty of assault likely to cause great bodily injury. To support that charge, the prosecutor relied on an earlier incident involving alleged strangulation of Jane Doe 1, rather than the incident involving Jane Doe 2.

Although the jury's verdicts reflected some doubt regarding the extent of Jane Doe 1's injuries and her allegations regarding an earlier incident, the convictions on the lesser included offenses reflected findings that appellant did touch Jane Doe 1 in a forceful and harmful manner (assault and battery). And, critically, the jury's conviction for child endangerment reflects that it found Jane Doe 2 suffered "unjustifiable . . . mental suffering." It is not clear whether the jury actually found such suffering was inflicted by direct or indirect means, because both theories were presented to it. But the jury necessarily rejected defense counsel's argument below that the incident was just an argument and that Jane Doe 2's suffering was insufficient to support

---

[4] There was also testimony about marks on Jane Doe 1 from incidents earlier in the day, but Jane Doe 1 did not testify Jane Doe 2 was present during those incidents.

criminal liability. Accordingly, although the jury was unable to find beyond a reasonable doubt all of the elements necessary for the felony charges, the verdicts reflect a belief in the overall narrative described in the victims' testimony as to the incident involving Jane Doe 2.

Appellant also argues some of appellant's actions were directed at Jane Doe 1 rather than at Jane Doe 2. It is true that, where an abuser's conduct is not directed at a child, the charge is analyzed under a theory of indirect endangerment. (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1441.) However, in the present case, appellant kicked open the door to Jane Doe 2's bedroom, yelled and swore, threw a mirror at or near Jane Doe 1 while Jane Doe 2 was standing a few feet behind, and called Jane Doe 2 a "bitch." Appellant cites no authority that these circumstances could not be considered the direct infliction of mental suffering. And appellant does not argue that any rational jury would have failed to find Jane Doe 2's suffering from such conduct was unjustifiable.

Because it is clear beyond a reasonable doubt that any rational jury would have convicted appellant of child endangerment if the trial court had not erred by instructing on the alternate indirect theory, the trial court's error was harmless. (*In re Lopez*, *supra*, 14 Cal.5th at pp. 580–581.)

DISPOSITION

The trial court's judgment is affirmed.

_____

SIMONS, J.

We concur.

_____

JACKSON, P. J.

_____

CHOU, J.

(A162580)