Filed 6/26/24  P. v. Banks CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>KEVIN TYRONE BANKS,<br><br>      Defendant and Appellant. | D081736<br><br><br><br>(Super. Ct. No. SCE411886) |

APPEAL from a judgment of the Superior Court of San Diego County, Steven E. Stone, Judge.  Affirmed.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Jon S. Tangonan, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

Kevin Tyrone Banks appeals his assault with a deadly weapon conviction, contending insufficient evidence supported the charge and that

the court incorrectly instructed the jury on self-defense during mutual combat. Finding substantial evidence of deadly weapon use and no error in the instructions, we affirm the conviction.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 2021, Banks and Halbert Braley got into a fight, during which Braley sustained various serious lacerations to his left arm and leg. Responding officers applied tourniquets to those limbs and identified his injuries as consistent with knife wounds. In surveillance footage capturing the incident, Braley is heard three times saying, "[w]hy'd you stab me, Kev?" Braley's girlfriend, Cynthia Ellis, is also heard in the footage multiple times asking, "[w]hy did you stab him?" When she called 911, Ms. Ellis reported the event as a stabbing.

An ambulance transported Braley to the hospital, where staff described his injuries as "stab wounds" caused by a "machete-type knife." Braley's left arm suffered a brachial artery laceration, transections of his radial and ulnar nerves and biceps and triceps muscles, as well as damage to the flexor tendons in his forearm. These injuries required surgical repair. Braley's left leg required an operation to repair severe damage to his Achilles tendon, posterior tibial tendon, plantaris tendon, tibial nerve, and posterior tibial artery. Braley remained in the hospital for seven days before recovering sufficiently for discharge.

On June 28, 2022, the case went to trial. At its conclusion, Banks's attorney asked the court to give the self-defense and mutual combat instructions. Over the People's objection the court agreed to read the self-defense instruction; defense withdrew its mutual combat instruction request. During deliberations the jury sent a note to the court asking, "If both people instigate a fight, do either have a right to claim self-defense?"

2

With the agreement of both parties, the court responded by sending into the jury room the standard mutual combat instruction:[1]

> A person who engages in mutual combat has a right to self-defense only if, one, he actually in good faith tried to stop fighting; two, he indicated by word or by conduct to his opponent in a way that a reasonable person would understand that he wanted to stop fighting and that he had stopped fighting; and three, he . . . [¶] gave his opponent a chance to stop fighting.

> If the defendant meets these requirements, he then has a right to self-defense if the opponent continued to fight.

> A fight is mutual combat when it began or continued by mutual consent or agreement. That agreement may be expressly stated or implied and must occur before the claim to self-defense arose.

The jury convicted Banks of assault with a deadly weapon (Pen. Code,[2] § 245, subd. (a)(1)), finding that he personally used a knife and inflicted great bodily injury (§§ 1192.7, subd. (c)(23), 12022.7, subd. (a)). Banks admitted two strike priors and two serious felony priors, with the court later dismissing one of each before imposing judgment. The court then sentenced Banks to 14 years in state prison.[3] Banks timely appealed the conviction.

---

[1]    CALCRIM No. 3471.

[2]    All subsequent statutory references are to the Penal Code.

[3]    The court imposed the three-year middle term for felony assault, doubled to six years for the prior strike, plus five years for the serious felony prior conviction, and an additional three years for the great bodily injury enhancement.

## III. DISCUSSION

Banks presents us with two arguments. First, he challenges the evidence in support of his assault with a deadly weapon conviction, claiming it was insufficient to support the jury's verdict. Second, he contends CALCRIM No. 3471 did not properly instruct the jury regarding self-defense in the context of mutual combat.[4]

### A.     *Sufficiency of the Evidence*

Banks claims there was insufficient evidence that he used a deadly weapon because none of the witnesses testified that they saw a weapon, and the surveillance footage did not depict a weapon or movement consistent with a stabbing.

When a defendant challenges the sufficiency of the evidence supporting a conviction, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 780.) We presume " ' "in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*Ibid.*)

" 'As used in section 245, subdivision (a)(1), a "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be

---

[4]     Without elaborating or citing authority, Banks also briefly asserts, "The fact that appellant may also have been injured suggests the evidence was insufficient to show that his conduct was assaultive as opposed to simply reckless." We disregard this argument as unsupported. (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418 (" '[W]here a point is merely asserted by [appellant] without any [substantive] argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion.' "].)

capable of producing and likely to produce, death or great bodily injury.' '" (*People v. Brown* (2012) 210 Cal.App.4th 1, 6.) "Great bodily injury" means "significant or substantial injury," but "[p]ermanent or protracted impairment, disfigurement, or loss of function . . . is not required." (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1087.)

If the assault causes injuries, "the nature of such injuries and their location are relevant facts for consideration in determining whether an object was used in a manner capable of producing and likely to produce great bodily injury." (*People v. Brown, supra,* 210 Cal.App.4th at p. 7.) Indeed, the use of a deadly weapon can be inferred from the victim's injuries. (*People v. Burton* (2006) 143 Cal.App.4th 447, 457.)

Braley suffered three deep lacerations to his arm and leg, requiring two tourniquets to stop the bleeding and a week-long hospital stay with multiple surgeries to repair the damaged muscles, tendons, nerves, and arteries. These injuries were substantial and not the type that would result in the absence of a sharp object. After reviewing both Braley's medical records, and photographs from the crime scene depicting his injuries, the jury could reasonably conclude that Banks used a deadly weapon on Braley. Additionally, the responding officers and medical staff that treated Braley described his injuries as being consistent with knife wounds. Further, both Braley and Ellis referred to Banks's actions as a stabbing. We therefore find sufficient evidence supports the jury's verdict that Banks used a deadly weapon during the assault on Braley.

B.    *Jury Instructions*

Banks asserts CALCRIM No. 3471 did not adequately explain "mutual combat" under the circumstances of this case. He further contends that the instruction imposed a burden on him "to prove that he tried to stop fighting,

5

he did stop fighting, and he gave Braley a chance to stop fighting," thereby relieving "the prosecution of its duty to prove that appellant did not act in self-defense."[5]

" 'If a supplemental instruction is given, . . . its correctness presents a question of law that we review de novo.' " (*People v. Doane* (2021) 66 Cal.App.5th 965, 980.) We determine " 'whether there is a "reasonable likelihood" that the jury understood the charge as the defendant asserts.' " (*Ibid*.)

Pursuant to CALCRIM No. 3471, the trial court instructed the jury that "A fight is mutual combat when it began or continued by mutual consent or agreement. That agreement may be expressly stated or implied and must occur before the claim to self-defense arose." Banks does not describe how this explanation was inadequate, nor can we find any impropriety. The instruction addressed the scenario posed by the jury, which was the application of self-defense "[i]f both people instigate a fight." It also complied with the legal definition of mutual combat. (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1046–1047 [" 'mutual combat' consists of fighting by mutual intention or consent, as most clearly reflected in an express or implied agreement to fight. . . . there must be evidence from which the jury could reasonably find that both combatants actually consented or intended to fight before the claimed occasion for self-defense arose" (italics omitted)].) We therefore find no error in the trial court's mutual combat explanation.

---

5    The People argue that Banks forfeited his challenge to CALCRIM No. 3471 by failing to object in the trial court. We agree with Banks that an objection was not required to preserve the issue for appeal because, if Banks were correct, such an error would have affected his substantial rights. (§ 1259; *People v. Mitchell* (2019) 7 Cal.5th 561, 579–580.)

Turning to the alleged improper burden shifting, Banks claims that by stating the agreement to fight "must occur before the claim to self-defense arose," the instruction imposed a burden on him to prove that he withdrew from the fight. This phrase merely addresses the requisite sequence of events for self-defense to apply in a mutual combat scenario.

On the other hand, several other instructions given to the jury clearly placed the burden of proof on the People, both generally and in the context of self-defense. (See, e.g., CALCRIM No. 3470 ["Right to Self-Defense [¶] . . . [¶] The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense."]; CALCRIM No. 875 ["Assault With Deadly Weapon [¶] . . . [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] . . . [¶] 5. The defendant did not act in self-defense."]; CALCRIM No. 220 ["Reasonable Doubt [¶] . . . [¶] A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt."]; and CALCRIM No. 355 ["Defendant's Right Not to Testify [¶] . . . [¶] [a defendant] may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt."].) Under these circumstances, it is not reasonably likely that the jury interpreted CALCRIM No. 3471 as shifting any burden of proof to Banks.

Given our discussion above, we find no error in the court's use of CALCRIM No. 3471.

7

## DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


McCONNELL, P. J.


CASTILLO, J.