Filed 5/22/25  P. v. Stone CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>PHILLIP STONE II,<br><br>        Defendant and Appellant. | A166913<br><br>(Contra Costa County<br>Super. Ct. No. 04002035020) |

This is an appeal from final judgment after a jury convicted defendant Phillip Stone II of multiple felony and misdemeanor offenses relating to his assault on his wife and his abuse of his children.  The jury also found true several aggravating factors, after which the trial court sentenced defendant to 15 years in prison.

Before defendant's first trial, defense counsel raised a concern as to his mental competency.  A mistrial was declared, and proceedings were held pursuant to Penal Code section 1368.[1]  Afterward, the trial court found defendant competent and a second trial began.  During defendant's second trial, his counsel continued to raise doubts as to his competency.  However, the court resolutely declined to hold further section 1368 proceedings.

---

[1] Unless otherwise stated, all statutory citations herein are to the Penal Code.

1

On appeal, defendant contends the court's competency ruling as well as its subsequent refusal to hold further proceedings under section 1368 after his counsel continued to raise a doubt as to his competency during trial were erroneous and require reversal. Defendant also contends two instructional errors made in connection with count 1, child abuse in violation of section 273a, subdivision (a), were prejudicial error also requiring reversal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 2, 2022, an amended information was filed charging defendant with five felonies: child abuse (§ 273a, subd. (a); count 1); discharging a firearm with gross negligence (§ 246.3, subd. (a); count 2); assault with a firearm (§ 245, subd. (a)(2); count 3); possession of a firearm by a felon (§ 29800, subd. (a)(1); count 4); and unlawful possession of ammunition (§ 30305, subd. (a)(1); count 5). It was alleged that defendant personally used a firearm during the commission of counts 1 and 3 (§ 12022.5, subd. (a)) and that multiple other aggravating factors were present. The amended information also charged defendant with a misdemeanor, child cruelty (§ 273a, subd. (b); count 6).

**I.** *Competency Proceedings and Jury Trial.*

Defendant's first jury trial began on May 2, 2022. However, the trial court declared a mistrial the next day after defendant refused to attend the trial and his counsel expressed a doubt as to his mental competency.

A competency hearing was held on September 13, 2022, at which Dr. Hoang, a faculty psychiatrist with the University of California, testified. Afterward, the trial court declared defendant competent to stand trial.

On October 31, 2022, defendant's second jury trial began, with a different judge presiding. Throughout trial, defense counsel expressed doubts

as to defendant's competency. The trial court, however, declined to hold further competency proceedings. Defendant, in turn, made multiple motions for new counsel under *People v. Marsden* (1970) 2 Cal.3d 118 and requested to proceed in propria persona—all of which the court denied. Defendant also requested a speedy trial, yet multiple continuances ensued. However, his trial went forward, and the following evidence was presented.

Defendant and the confidential victim (C.V.) have been married since 2018 and have three children together, including a baby, Jane Doe No. 1. C.V. also has a firstborn daughter, Jane Doe No. 2, whom defendant cared for as if he were her father.

### A.    Counts 1–5:  December 2, 2021.

On December 2, 2021, approximately 7:00 p.m., Antioch Police Officer Chandler responded to a 911 caller who reported hearing a gunshot and a woman screaming at Mountaire Park. After Officer Chandler arrived, he found C.V. holding Jane Doe No. 1, an infant, while standing next to a vehicle that matched the 911 dispatcher's description. C.V. told the officer that she had been arguing with defendant, who was "on drugs" and threatening to kill himself. During their argument, defendant was seated in the vehicle's driver's seat with Doe No. 1 in his arms. He pulled out a gun, which accidentally "went off." According to C.V., defendant was in "the worst" state that she had ever seen him in and he could have shot their baby. Afterward, defendant drove recklessly away from the park, with Doe No. 1 still in his arms. Defendant eventually left the vehicle and fled the area on a scooter.

C.V.'s 911 call was played for the jury. During this call, C.V. repeatedly told defendant to get out of the car and asked whether he was going to kill himself. C.V. also asked defendant why he had his hand on their baby's mouth. A gunshot can be heard, along with C.V. crying and Doe No. 1

3

screaming. C.V. then yelled that defendant "could've shot [their] child" and demanded that he give her the baby.

Officer Chandler later searched the vehicle and found a fresh bullet hole in the front passenger seat that extended through the passenger side door to the vehicle's exterior. The officer did not find the accompanying bullet or ejected shell casing.

## B. Count 6: Misdemeanor Child Cruelty, August 30, 2021.

On August 30, 2021, approximately 4:37 a.m., Antioch Police Officer Duff responded to two 911 calls made by 12-year-old Jane Doe No. 2. In this 911 call, Doe No. 2 reported that defendant had attacked her mother, C.V., by pinning her to the floor and choking her. When Officer Duff arrived at the family residence shortly thereafter, Jane Doe No. 2 let him inside. Officer Duff saw defendant attempting to leave through a side door and instructed him to stop. As Officer Duff ran after defendant, defendant turned toward him while reaching for his waistband. Officer Duff, concerned that defendant was armed, drew his service weapon, pointed it toward defendant, and ordered defendant to show his hands. Defendant ignored his command and escaped through the garage rafters.

## C. Prior Uncharged Acts.

The jury also heard evidence relating to defendant's prior uncharged acts of domestic violence that occurred on December 30 and April 19, 2021.

## II.  *Verdict, Sentence and Appeal.*

On December 1, 2022, the jury found defendant not guilty on count 2 but otherwise guilty as charged.  The jury also found true all but one of the alleged aggravating factors.[2]

On December 9, 2022, the trial court sentenced defendant to a total prison term of 15 years.  This timely appeal followed.

## DISCUSSION

On appeal, defendant contends the trial court prejudicially erred in (1) finding him competent to stand trial; (2) relying on its initial competency finding and declining to hold further competency proceedings after his counsel raised a bona fide doubt during trial as to his ability to rationally assist in his defense; (3) inadequately instructing the jury on the requisite mens rea to convict on count 1, felony child abuse in violation of section 273a, subdivision (a); and (4) failing to sua sponte instruct the jury on juror unanimity.  We address each issue in turn *post.*

## I.  *The Trial Court's Competency Finding Stands.*

Defendant first contends substantial evidence does not support the trial court's finding that he was competent to stand trial.  We disagree.

The constitutional guarantee of due process forbids a court from trying or convicting a mentally incompetent criminal defendant.  (*People v. Bloom* (2022) 12 Cal.5th 1008, 1030.)  "A defendant is incompetent to stand trial when 'as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.'  (§ 1367,

---

[2] The jury found not true the allegation that the manner in which defendant committed the offenses indicated planning, sophistication or professionalism (Cal. Rules of Court, rule 4.421(a)(8)).

subd. (a); see *People v. Wycloff* (2021) 12 Cal.5th 58, 81–82 [283 Cal.Rptr.3d 1, 493 P.3d 789] (*Wycloff*).)" (*People v. Parker* (2022) 13 Cal.5th 1, 28.)

"If at any time during a criminal proceeding a doubt arises regarding the defendant's competence to stand trial, the court must hold a competency hearing. (§§ 1368, 1369.)" (*People v. Carr* (2021) 59 Cal.App.5th 1136, 1143.) " '[S]ection 1369 sets forth the procedures for the trial in which the question of the mental competence of the defendant is to be determined. It provides that such a trial may be made 'by court or jury' [citation] . . . . It also provides for the appointment by the court of one or more experts to examine the defendant [citation], the introduction of evidence by the defendant and the People [citation], and the presentation of argument by each thereafter [citation].' " (*People v. Carr, supra*, at p. 1143.)

"A defendant is presumed competent unless the contrary is proven by a preponderance of the evidence." (*People v. Lawley* (2002) 27 Cal.4th 102, 131.) It is the defendant's burden to prove incompetence. (*People v. Marks* (1988) 45 Cal.3d 1335, 1342.) On appeal, we review a trial court's competency finding for substantial evidence, viewing the evidence in a light most favorable to the court's judgment, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. (*People v. Lawley, supra*, at p. 131.) "If the circumstances reasonably justify the [court]'s findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

Here, the judge in defendant's first trial declared a mistrial and suspended proceedings on May 3, 2022, after he refused to attend court and

6

his counsel raised a doubt as to his competence. The next day, the court appointed two doctors to evaluate defendant. Both doctors submitted reports in anticipation of the competency hearing. One doctor, Dr. Zhang, was unable to form an opinion because defendant declined to participate in his assessment. As such, Dr. Zhang recommended that defendant be referred to the regional center for diagnostic assessment and evaluation.

However, the second doctor, Dr. Hoang, diagnosed defendant with delusional disorder and depressive disorder.[3] Dr. Hoang evaluated defendant and reviewed his records, which included his psychiatric treatment records. At the hearing, Dr. Hoang testified that defendant had some understanding of the criminal proceedings and the individuals involved. However, he opined defendant had "fixed false beliefs" that he was being "railroaded" by the criminal justice system, including by his own attorneys, which impacted his cognitive ability to assist counsel in a rational manner.

As one example of defendant's delusional thinking, Dr. Hoang testified that defendant told him that his wife was having "intimate sexual relations" with a police officer involved in the case. Defendant, seated with counsel, reacted angrily, emphatically denying having said such a thing and asking to be excused so as not to have to "hear his bullshit." Dr. Hoang thereafter repeated his testimony; however, when pressed by defense counsel, Dr. Hoang eventually "backtrack[ed]." The doctor acknowledged that his report and notes made no mention of defendant's alleged statement about sexual relations between his wife and an officer. And, on his second day of testimony, Dr. Hoang finally admitted that he "might have misremembered that."

---

[3] Dr. Hoang also diagnosed defendant with two drug use disorders that were in remission.

Dr. Hoang also acknowledged having no information regarding defendant's conversations or interactions with his attorneys. As such, the doctor did not know whether the attorneys had been responsive to defendant or diligent in handling his case. In addition, Dr. Hoang acknowledged that his report described defendant as attentive with linear thought processes, fair judgment, fair recall, "a good ability at abstraction," and insight into his legal situation. The report also noted that defendant was highly motivated to help himself in the legal process, as evidenced by his visits to the law library and efforts to find a new attorney.

Finally, Dr. Hoang acknowledged that defendant did not report previously having been diagnosed with a delusional (or other psychotic) disorder. Yet, Dr. Hoang nonetheless stood by his initial diagnosis of delusional disorder.

Before ruling, the trial court criticized Dr. Hoang's testimony as "sloppy." The court noted that Dr. Hoang effectively threw "a Molotov cocktail in the middle of an investigation" by testifying "several times" that defendant told him that his wife had sexual relations with a police officer. Moreover, "[Dr. Hoang] didn't correct the mistake. He waffled his way backwards, repeatedly, on that same day in testimony. And, then, completely recanted it in the second day." According to the court, "frankly, [the court] could understand [defendant's] reaction to that, especially if it was patently untrue—it's incendiary."

The court also described "[Dr. Hoang's] testimony [as] strikingly different between day one and day two. Day one, he was ad-libbing quite a bit. Not just about the issue of defendant's wife or partner, and the police officer; but, about other things that were not found in either his report or his notes."

8

Ultimately, the trial court concluded that "in order to find [defendant] incompetent, at this point, I would have to rely on the doctor's report and his testimony; and, there's too much that concerns me about it to allow me to do that in this particular case. [Defendant] may or may not be delusional or incompetent; but, I cannot rely on the doctor's testimony and report. . . . I think it would be inappropriate to do so. [¶] I think there's evidence, in some fashion, that [defendant] was misinformed and not necessarily delusional. I think that he clearly believes that people are after him. There's a paranoia level in there.· Whether that paranoia rises to delusional—delusions, without the doctor's evaluation, I can't fairly say it falls on one side or the other. [¶] I think there is an issue of whether or not he can't assist his attorney, versus him not—him choosing not to assist his attorney. . . . But I can't say, by a preponderance of the evidence . . . that [defendant] is incompetent and that the defense has met their burden."

On this record, there is no basis to override the trial court's competency ruling, including its rejection of Dr. Hoang's opinions for lack of credibility. (*People v. Albillar, supra*, 51 Cal.4th at p. 60.) Even Dr. Hoang acknowledged defendant appeared capable of understanding the criminal proceedings. (§ 1367, subd. (a).) Indeed, defendant told Dr. Hoang that he had visited the prison law library to work on his case and had been searching for a new attorney because he did not believe he was well represented by current counsel. Further, as the court noted, it was unclear from the record whether defendant was unable to assist his counsel due to a mental condition or was simply unwilling to work with counsel because defendant was unhappy with the representation. Without a "causal relationship between the defendant's mental condition and his . . . trial-related functional abilities," the standard for incompetence under section 1367 was not met. (*People v. Buenrosto*

9

(2018) 6 Cal.5th 367, 388–389; *People v. Nelson* (2016) 1 Cal.5th 513, 560 [record must show the defendant is, due to a mental condition, "incapable of understanding the nature of the proceedings or unable (as opposed to unwilling) to assist counsel"].) As the California Supreme Court explains, " '[a] defendant who refuses to work with his lawyer out of spite alone is not incompetent,' . . . 'even if that defendant has a serious mental disease or defect.' " (*People v. Buenrosto, supra*, at p. 389.)

Defendant counters that, even accepting the trial court's finding that Dr. Hoang's testimony lacked credibility, the record as a whole, including medical reports, transcripts, and jail calls, "all evidenced [his] paranoid belief that everyone was against him and supported the doctor's diagnosis."

Defendant confuses our legal standard. As stated *ante*, we view the evidence on appeal in a light most favorable to the trial court's ruling, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. (*People v. Lawley, supra*, 27 Cal.4th at p. 131.) Under this standard, substantial evidence exists in the record to support an inference that defendant was acting rationally, even while erupting in anger and refusing to assist his attorney. For one, Dr. Hoang, the expert witness hired to assess defendant's competency, told an unfounded, inaccurate story to the court about his allegedly delusional beliefs, rightly enraging defendant. In addition, defendant's attorneys, despite his repeated requests for a speedy trial, sought and obtained continuances. And finally, defendant's multiple motions for new counsel under *People v. Marsden, supra*, 2 Cal.3d 118, and his request to proceed in propria persona were all denied. All of these actual circumstances could have engendered a rational belief in defendant that the legal system was working against him, such that he had little to gain by cooperating with it. On this record, no basis exists to disturb the court's

10

competency finding. (See *People v. Mai* (2013) 57 Cal.4th 986, 1035–1036 [no substantial evidence of incompetence when "defendant's anger and resentment were often connected in an understandable way to the trial proceedings"].) As the high court instructs: "If the circumstances reasonably justify the [court]'s findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar, supra*, 51 Cal.4th at p. 60.)

## II. *The court did not abuse its discretion in declining to hold further competency proceedings during defendant's second trial.*

Defendant further contends that in his second trial, the trial court, presided over by a different judge, erred by not suspending trial and ordering further competency proceedings. He is again mistaken.

"The trial court's 'duty to assess competence is a continuing one.' [Citation.] The obligation to suspend proceedings and hold a competency trial is triggered whenever ' "the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial." ' " (*People v. Parker, supra*, 13 Cal.5th at p. 28.) However, when, as here, a defendant has previously been found competent, "a trial court need not suspend proceedings to conduct a second competency hearing unless it 'is presented with a substantial change of circumstances or with new evidence casting a serious doubt on the validity of that finding." (*People v. Jones* (1991) 53 Cal.3d 1115, 1153.) Thus, "the duty to suspend is not triggered by information that substantially duplicates evidence already considered at an earlier, formal inquiry into the defendant's competence; when faced with evidence of relatively minor changes in the defendant's mental state, the court may rely on a prior competency finding rather than convening a new hearing to cover largely the same ground." (*People v. Rodas* (2018) 6 Cal.5th 219, 234–235.)

11

"We review for substantial evidence the trial court's finding of no substantial change of circumstances or no new evidence casting serious doubt on the initial competency determination [citation], and we review its decision not to reinstate competency proceedings for an abuse of discretion." (*People v. Easter* (2019) 34 Cal.App.5th 226, 243; accord, *People v. Welch* (1999) 20 Cal.4th 701, 742 ["When the evidence casting doubt on an accused's present competence is less than substantial . . . [i]t is within the discretion of the trial judge whether to order a competence hearing"].)

Here, defense counsel renewed his concern that defendant could not rationally assist in his defense daily during trial. Yet, counsel seemed to acknowledge defendant was "essentially [engaging in] the same type of behavior . . . that was exhibited prior to [the competency hearing]." As defense counsel described it, defendant, as before, was "go[ing] between being angry or not wanting to speak to me or not wanting to visit me, to a range of emotions and reactions which makes it, in our opinion, difficult for him to assist."

In response to counsel's concern, the trial court noted that on November 10, 2022, defendant was "quite agitated" and referred to his attorney using an offensive and derogatory term. Nonetheless, the court observed the next day, "[Y]esterday I did not note any aberrant behavior, and the Court will continue to be mindful and make any appropriate records as necessary." The trial court reiterated this observation the following day, and again on several subsequent days.

On November 22, 2022, the trial court additionally noted that defendant refused to be transported to court. The trial court explained, however, its understanding that "[defendant] had been here all morning and was hoping that his matter would have been heard this morning." The trial

court then confirmed there had been no "behavior at all that indicates [defendant] does not understand what is going on at this time."

After the close of evidence, defense counsel reiterated his concern as to defendant's incompetency. The trial court remained unpersuaded: "I'm going to make a record that throughout the trial, throughout the trial proceedings, from the 402s through jury selection and with each witness, Mr. Stone has not acted out in any way or done anything in open court which would indicate he did not understand the proceedings. He has remained quiet and calm, with no outbursts. [¶] The Court also observed at times Mr. Stone conferring with counsel at counsel table. [¶] Yesterday when the Court took the waiver of his right to testify, Mr. Stone understood and answered each question appropriately. And when the Court asked a compound question that he did not understand, he indicated such to the Court, and the Court then restated the question and again he answered it appropriately."

Defendant does not dispute the accuracy of the court's observations. Nor does he point to any substantial change of circumstances or new evidence of incompetence that the court neglected. Instead, defendant argues there is "no evidence in the record below that [he] chose to communicate with counsel or was able to assist in the defense when it suited him or that he was malingering." According to defendant: "There would have been no reason for defense counsel's repeated claims that [he] was incompetent to stand trial, unless he believed it to be true. This, along with other evidence known to the Court, should have triggered a bona fide doubt about [his] competency to stand trial."

Defendant's arguments uproot our standard of review. Defendant essentially asks that we presume his incompetence based on little more than his counsel's repeated expressions of doubt. We cannot do that. Under well-

established appellate rules, we must presume that the trial court's decision not to hold additional competency proceedings was correct, and we affirm in the absence of a proper showing that the decision was unsupported by substantial evidence or was otherwise an abuse of discretion.[4] (*People v. Lawley, supra*, 27 Cal.4th at p. 131; *People v. Easter, supra*, 34 Cal.App.5th at p. 243.) Simply put, " '[t]he trial judge's ruling regarding whether a competency hearing is required should be given great deference. "An appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper." ' " (*People v. Weaver* (2001) 26 Cal.4th 876, 953.) Thus, because defendant has not made the requisite showing on appeal, we decline to disturb the trial court's superior judgment as to his competency.

III. ***The jury was properly instructed on the mens rea for count 1, felony child abuse (§ 273a, subd. (a)).***

Defendant contends the trial court committed prejudicial error by giving the instruction on indirect infliction of child abuse in violation of

---

[4] Defendant correctly notes that a new judge, Judge Lee, presided over his trial. Defendant claims there "is no indication in the record that Judge Lee was aware of the reason for Judge Brady's [pretrial competency] ruling." We decline to assume Judge Lee was ignorant of the record relating to defendant's competency proceedings. (*People v. Mancha* (1963) 213 Cal.App.2d 590, 594 [appellate court presumes the trial court was familiar with case history].) In any event, it is undisputed that Judge Lee "had an opportunity to observe, and converse with, defendant throughout the trial itself and the posttrial proceedings . . . [and that Judge Lee] appropriately considered these observations in concluding that defendant's condition was essentially unchanged from the start of trial, when the [previous judge] found him competent." (*People v. Jones, supra*, 53 Cal.3d at p. 1153.) As such, as stated, Judge Lee's ruling stands.

section 273a, subdivision (a) because the instruction failed to advise the jury on the correct mens rea. We disagree.

" 'A trial court must instruct the jury on every theory that is supported by substantial evidence, that is, evidence that would allow a reasonable jury to make a determination in accordance with the theory presented under the proper standard of proof.' [Citation.] An appellate court reviews the trial court's decision to give a particular instruction de novo. [Citation.] In doing so, we must determine whether there was sufficient evidence to support the challenged instruction [citation], and whether the instructions delivered a correct statement of the law (*People v. Fiu* (2008) 165 Cal.App.4th 360, 370 [citation] ['the instructions must be complete and a correct statement of the law'])." (*People v. Stinson* (2019) 31 Cal.App.5th 464, 476.)

Count 1 charged a violation of the child abuse statute, section 273a, which violation may be either direct or indirect. (*People v. Burton* (2006) 143 Cal.App.4th 447, 454.) "When the harm to a child is directly inflicted, the requisite mental state for the section 273a offense is general criminal intent. ([Citation] [general criminal intent is the intent to do the proscribed act].) When that harm is indirectly inflicted, the requisite mental state is criminal negligence. ([Citation]; see also § 20 [in every crime there must exist act and intent, or act and criminal negligence].) Criminal negligence is aggravated, culpable, gross or reckless conduct that is such a departure from that of the ordinarily prudent or careful person under the same circumstances as to be incompatible with a proper regard for human life. [Citation.] A defendant may be deemed to be criminally negligent if a reasonable person in his or her position would have been aware of the risk." (*People v. Burton, supra*, at p. 454.)

15

Our jury was instructed for purposes of count 1 on a theory of *indirect* infliction of child abuse based upon criminal negligence in violation of section 273a, subdivision (a). With both parties' consent, the court gave a modified version of CALCRIM No. 821 (Child Abuse Likely to Produce Great Bodily Harm or Death), which stated in relevant part: "The defendant is charged in Count 1 with child abuse likely to produce great bodily harm or death in violation of Penal Code section 273a(a).

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant, while having care or custody of a child, willfully caused or permitted the child to be placed in a situation where the child's person or health was endangered;

"2. The defendant caused or permitted the child to be endangered under circumstances or conditions likely to produce great bodily injury or death.

"AND

"3. The defendant was criminally negligent when he caused or permitted the child to be endangered.

"Someone commits an act *willfully* when he or she does it willingly or on purpose. [¶] . . . [¶]

"*Criminal negligence* involves more than ordinary carelessness, inattention, or mistake in judgment. A person acts with *criminal negligence* when:

"1. He or she acts in a reckless way that is a gross departure from the way an ordinarily careful person would act in the same situation;

"2. The person's acts amount to disregard for human life or indifference to the consequences of his or her acts;

"AND

16

"3. A reasonable person would have known that acting in that way would naturally and probably result in harm to others."

There is no dispute this instruction delivered a correct statement of the law. (*People v. Burton, supra*, 143 Cal.App.4th at p. 454.) Instead, defendant wrongly claims the court gave CALCRIM No. 823 (Misdemeanor Child Abuse) for purposes of count 1. Not so. The court gave CALCRIM No. 823 for purposes of count 6 and gave CALCRIM No. 821 for purposes of count 1. Because defendant acquiesced to the court's giving CALCRIM No. 821, he has no right to challenge it on appeal. (*Green v. Healthcare Services, Inc.* (2021) 68 Cal.App.5th 407, 419 ["a party who acquiesces in the giving of a jury instruction may not later appeal the giving of that instruction"]; *A.H. v. Tamalpais Union High School Dist.* (2024) 105 Cal.App.5th 340, 354.)

In any event, forfeiture aside, the record reflects that the court's modified version of CALCRIM No. 821 aligned with both the charge in count 1 and the evidence offered in support of it. Specifically, the evidence proved defendant, during an argument, wielded a gun at C.V. while holding Doe No. 1 in his arms. The gun accidentally discharged while defendant was still holding Doe No. 1, putting the baby in grave danger of great bodily harm or death. Defendant then endangered Doe No. 1 again by driving recklessly away, still screaming at C.V. and ignoring her pleas to give her the baby.

Ignoring this evidence, defendant insists the prosecutor "argued a combination of both direct and indirect harm" and, thereby, confused the mens rea required for count 1. We disagree. The prosecutor argued defendant's child abuse of Doe No. 1 was an indirect result of his assault on C.V. in that, while committing the assault, he negligently discharged a gun with Doe No. 1 in his arms—an act that could have resulted in great bodily

17

injury or death to the baby. He then recklessly drove off, still screaming at C.V., with the baby unrestrained, further endangering her.

Thus, the prosecutor's theory was that defendant directed his acts of domestic violence toward C.V. In doing so, defendant placed the baby in danger even though he did not direct any criminal acts toward the baby. This theory, consistent with the evidence, was proper: "When a charge of child abuse is based on the mental suffering resulting from a child being exposed to physical abuse by one parent against the other, the theory at issue is *indirect* child abuse, for which criminal negligence is the requisite mental state." (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1441; accord, *People v. Burton, supra*, 143 Cal.App.4th at pp. 454–455 [the correct theory was indirect child abuse when "the minor was on the scene while the attack took place and witnessed its bloody immediate aftermath," yet "there is no suggestion that defendant intended to directly inflict suffering on his son"].)

Accordingly, we conclude the modified version of CALCRIM No. 821 given to the jury was both a correct statement of law and supported by substantial evidence. As such, there was no error, much less prejudicial error, in giving it. (*People v. Stinson, supra*, 31 Cal.App.5th at p. 476.)

## IV. *A juror unanimity instruction was not required.*

Defendant finally contends the trial court erred by failing to sua sponte instruct the jury on juror unanimity. In a criminal case, a jury verdict must be unanimous. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "Additionally, the jury must agree unanimously the defendant is guilty of a specific crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]" (*Ibid.*, italics omitted.) When the prosecution does not elect

18

among crimes, "[a] unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not '[when] multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.' " (*Id*. at pp. 1134–1135; accord, *People v. Hernandez* (2013) 217 Cal.App.4th 559, 569.)

" ' "Neither instruction nor election are [*sic*] required, however, if the case falls within the continuous course of conduct exception." ' " (*People v. Leonard* (2014) 228 Cal.App.4th 465, 491.) This exception applies " ' "when the acts alleged are so closely connected as to form part of one continuing transaction or course of criminal conduct," ' or ' " 'when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them.' [Citations.]" [Citation.]' [Citations.] The justification for the exception is that there is no need for an instruction when there is a single course of conduct because members of the jury cannot distinguish between the separate acts. Further, the instruction is unnecessary when the defendant proffers the same defense to multiple acts because a guilty verdict indicates that the jury rejected the defendant's defense in toto." (*People v. Hernandez, supra*, 217 Cal.App.4th at p. 572; accord, *People v. Fish* (2024) 102 Cal.App.5th 730, 738 [failure to give unanimity instruction is harmless error when "the record provides no rational basis, by way of argument or evidence, for the jury to have distinguished between the two acts offered in support of the crime"].)

Despite defendant's contrary claims, this case falls squarely within the continuous course of conduct exception. As one appellate court has observed: "Although the child abuse statute may be violated by a single act [citation], more commonly it covers repetitive or continuous conduct. [Citations.]" (*People v. Ewing* (1977) 72 Cal.App.3d 714, 717.) Here, the information

19

alleged a course of conduct for purposes of count 1, child abuse in violation of section 273a, subdivision (a), that occurred on the evening of December 2, 2021. Thus, as in *Ewing*, the issue before the jury was whether defendant was guilty of a course of conduct that began when, during an argument, he "pulled a gun" on C.V. while holding Doe No. 1; continued with his accidentally firing the gun while still holding Doe No. 1; and ended when he recklessly drove off with Doe No. 1 unrestrained in the vehicle. The issue was not whether he committed a particular act on a particular day. (See *Ewing, supra*, 72 Cal.App.3d at p. 717; see also *People v. Hernandez, supra*, 217 Cal.App.4th at p. 573 ["a continuous course of conduct exists when the same actor performs the same type of conduct at the same place within a short period of time, such that a jury cannot reasonably distinguish different instances of conduct"].) As such, an instruction requiring jury unanimity as to any particular act would have been inappropriate, and its omission was not error.

## DISPOSITION

The judgment is affirmed.

Jackson, P. J.

WE CONCUR:

Simons, J.
Burns, J.

A166913/*People v. Phillip Stone II*

20